**In re Sharon MART a/k/a Sharon Nathanson Mart, Jeffrey Michael Mart, Debtors.**

**CHICAGO TITLE INSURANCE COMPANY, INC., Plaintiff,**

**v.**

**Sharon Nathanson MART and Jeffrey Michael Mart, Defendants.**

**Bankruptcy Nos. 87–00119–BKC–TCB, 87–00992–BKC–TCB. Adv. No. 87–0217–BKC–TCB–A.**

United States Bankruptcy Court, S.D. Florida.

Aug. 4, 1988.

**548**

Holland & Knight, Robert Jennings, Ft. Lauderdale, Fla., Harry D. Lewis, Holland & Knight, Miami, Fla., for plaintiff.

Ackerman, Bakst, Gundlach, Lauer & Zwickel, P.A., Leslie Gern Cloyd, West Palm Beach, Fla., for defendants.

Kenneth Rappaport, Boca Raton, Fla., for Jeffrey Mart.

Irving E. Gennet, Boca Raton, Fla., trustee.

## ORDER ON REMAND

THOMAS C. BRITTON, Chief Judge.

The District Court has reversed and remanded the Judgment in this adversary proceeding:

> "to consider [under 11 U.S.C. § 727(a)] Sharon Mart's invocation of her Fifth Amendment privilege against self-incrimination and interspousal privilege as grounds for denial of discharge." (CP 37 at 19–20).

The parties were heard July 12. They agreed that no further evidence is appropriate and have submitted memoranda. This remand presents issues of first impression under § 727(a)(6), which though effective in 1979, has received virtually no published comment.

■ The debtor invoked her Fifth Amendment privilege on two occasions: (1) September 17, 1986, Ex. 11 at 3; and (2) February 20, 1987, Ex. 14 at 23. She invoked the interspousal privilege once: (3) February 26, 1987, Ex. 7 at 43–45; and it was invoked once by her husband: (4) May 5, 1987, Ex. 20 at 123.

Plaintiff argues that each of these acts requires denial of discharge under 11 U.S.C. § 727(a)(6)(C). This subsection applies to a debtor who:

> "has refused, in the case ... (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify."

It is a binding rule in this Circuit that the statutory grounds for denial of discharge:

> "should be construed liberally in favor of the bankrupt and strictly against the objecting creditor." *In re Jones*, 490 F.2d 452, 456 (5th Cir.1974) (upholding grant of discharge).

In three of the four instances, the debtor's refusal occurred during a deposition and the fourth (February 20, 1987) was at a creditors' meeting conducted by a trustee.[1] In no instance did the plaintiff/interrogator request a court ruling approving the question or ordering a response.

In each instance, the Fifth Amendment refusal, which was temporary and at counsel's instruction, while he was informing himself, was appropriate and justified.

The debtor shortly thereafter abandoned the Fifth Amendment privilege on February 26, 1987. During that examination, during a subsequent four-hour examination on May 5, 1987, and during the trial of this adversary proceeding on May 19, 1987, she answered every question except the ones (repeated twice) to which interspousal immunity was raised. The delayed response did not prejudice the interrogator.

---

1. Since October 1, 1979, "the court may not preside at, and may not attend" any creditors' meeting. § 341(c).

[1] I agree with the debtor that under these circumstances she has not "refused ... to testify" within the purview of § 727(a)(6)(C).

The three cases cited by Judge Marcus for his statement that refusal to testify at a creditors' committee meeting is a ground, in and of itself, to deny a discharge of debt, (CP 37 at 16–17), were as he noted under the former statute which (a) denied discharge even for a proper invocation of the Fifth Amendment, and (b) all occurred when creditors' meeting were before the bankruptcy judge. They are inapposite here.

In *In re Kolb*, 151 F.2d 605, 606 (2nd Cir.1945), the court upheld the discharge of a partnership and said:

"The questions were undoubtedly material. The sole issue is whether the refusal to answer without any previous approval by the Referee, is sufficient to deny the bankrupts their relief. Appellants contend that the bankrupts, in failing to object to the questions when asked, conceded their materiality, and waived the express approval by the Court. We think the District judge was correct in rejecting this contention and in concluding that *'it is the obligation of the examiner to have the form and the merits of the question on which the right to a discharge may subsequently depend approved by the court, once reluctance to answer is asserted.* It is not impossible that a mere ruling by the court might curb the persistence of the witness in his refusal to answer.' Before any penalty is imposed on such refusal, there should be at least some indication of the Court's approval of the question posed. A bankrupt need not decide the issue of materiality at his peril."[2] (Emphasis added).

In *Rogers v. Webster*, 776 F.2d 607, 612 (6th Cir.1985), the court vacated a civil contempt judgment for failure to comply with discovery orders. The court said:

"When the Fifth Amendment privilege is invoked in a judicial proceeding, the person claiming its protection ordinarily 'receives a judicial ruling at that time on the validity of his claim, *and he has an opportunity to reconsider it before being [penalized] for refusal to answer.'* Garner v. United States*, 424 U.S. 648, 663, 96 S.Ct. 1178, 1187, 47 L.Ed.2d 370 (1976). Not affording one who asserts the privilege an opportunity to answer, once his claim of privilege has been rejected, is to penalize him merely for asserting the privilege." (Emphasis added).

We turn to the details of each incident.

### 1986 Deposition in Corporate Case

■ On September 17, 1986, four months before Mrs. Mart filed for bankruptcy, her deposition was taken by this plaintiff in a corporate bankruptcy. The following occurred:

"Q. Have you ever been employed by Beacon 21 Development Corporation?

Mr. Watterson [her then attorney]: Stop. On behalf of my client Sharon Mart, let me interpose the objection based upon the Fifth Amendment and upon advice given by me to her. Any answers to that question and the questions that you are going to ask in this deposition may tend to have an impact of incrimination upon her and I have advised her not to answer those questions." Ex. 11 at 3.

The debtor argues that because this refusal occurred in another bankruptcy case, it did not occur "in *the* case", and cannot, therefore, fall within § 727(a)(6). But, as Judge Marcus has noted (CP 37 at 21), her refusal to testify:

"in connection with another case ... concerning an insider"

could be a ground for denial of her discharge under § 727(a)(7).

---

**2.** Section 727(a)(6)(C) has added the words "or to testify" to the statute which was before the *Kolb* court. But the legislative history, quoted in full below, does not suggest any intent to overrule this decision, nor to force a bankrupt to decide the propriety of invoking the Fifth Amendment or any other privilege at his peril and without the opportunity for subsequent reconsideration.

The corporation was not an "insider" *as to her bankruptcy*, as that term is defined in this statute, § 101(30)(A)(iv), because she was neither a director, officer, nor a person in control. I find that the corporate bankruptcy case did not concern an insider with respect to her case.[3]

This refusal to testify in another bankruptcy, therefore, is not a basis for denying this debtor's discharge.

■ Furthermore, irrespective of the foregoing point, it is plaintiff's burden here to show that the privilege was not properly invoked and it has made no effort to do so.[4] Mrs. Mart's husband was then under criminal investigation concerning his conduct in the corporate management. Her attorney had instructed her not to answer any questions concerning her involvement in that mismanagement. She was not then or later offered immunity. The possibility of prosecution was more than fanciful and her privilege was properly invoked. *In re Corrugated Container Anti-Trust Litigation*, 620 F.2d 1086, 1092 (5th Cir.1980), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981).

### *February 1987 Creditors' Meeting*

Five months later, on February 20, 1987, pursuant to § 341, a creditors' meeting was conducted in Mrs. Mart's bankruptcy by the trustee, outside the presence of the court. After 21 pages of examination by the bankruptcy trustee without any objection from the debtor, this plaintiff requested and received permission to ask one question:

"Q: [referring to the deposition five months earlier in the corporate case] I will ask you the same question: Have you, in fact, received any proceeds of any closings arising out of the sale of the unit at the Beacon 21 Development Corporation project, and I'll ask you if you still wish to invoke the Fifth Amendment.

Mr. Zwickel [her then attorney]: The problem here is that I'm not sure of all of the proceedings that are presently pending, and I, at this time, invoke the Fifth Amendment right understanding that a discharge may be denied for invoking the Fifth Amendment right. However, I will discuss this with my client because we have not had a chance to talk about this before, Mr. Lewis, and at the time that you take the 2004 [deposition which had been scheduled six days later under B.R. 2004 by this plaintiff], we may, at that time, waive the privilege.

Mr. Lewis: Okay." Ex. 14 at 22–24.

At her examination held six days later, the Fifth Amendment privilege was never raised and was, therefore, waived.

Plaintiff has not questioned the propriety of this temporary invocation of the Fifth Amendment privilege and I find that it was properly invoked by the debtor.

### *February 26, 1987 Deposition*

As has been said, the Fifth Amendment was not invoked during this one-hour, 54-page examination of the debtor by this plaintiff. Like the previous interrogations, this examination, under B.R. 2004, was outside the presence of the court. The debtor's only refusal to testify occurred at the conclusion:

"Q: [by this plaintiff]: Let me ask her, did you and your husband discuss filing jointly bankruptcy?

Mr. Zwickel [debtor's counsel]: Let me object that there is an interspousal immunity. ..."

---

3. I agree with plaintiff that the statutory definition is not exclusive and that if the debtor in this case were a corporation, Mrs. Mart would be an insider with respect to the corporate bankruptcy, because she was related to a director, officer, and person in control of the corporation. § 101(30)(B)(vi). I believe, however, that the difference between subparagraphs (A) and (B) was intended and should be given effect, particularly in applying § 727(a)(7). There is no other evidence sufficient to identify the corporation as an insider with respect to this bankruptcy.

4. Before the amendments which took effect October 1, 1979, the invocation of the Fifth Amendment in a bankruptcy case, whether proper or not, was ground for denial of discharge under § 14(c)(1) of the Act of 1898. Legislative history, quoted below; 4 *Collier on Bankruptcy* (15th Ed.1988) ¶ 727.09[3].

Mr. Lewis [plaintiff's counsel]: I think you're wrong, Mr. Zwickel, I think it is a matter of federal—in bankruptcy law the interspousal immunity only applies as a matter of state law and does not apply to federal questions. And I think there are federal court cases on point. Let me simply make that statement for the record and should it be appropriate I will come back and ask that she be ordered to answer those questions.

Mr. Zwickel: Well, if you can show me that the interspousal immunity doctrine does not apply in this case, she'll answer the questions." Ex. 7 at 43–45.

Plaintiff never sought a court order and if counsel ever discussed the point further, it does not appear in this record. Mr. Zwickel has since died.

■■■■ I am convinced that the debtor's refusal to testify must be deliberate and final in order to jeopardize discharge. The foregoing exchange was nothing more than an agreement by counsel to defer the question. It is no predicate for denial of her discharge under § 727(a)(6)(C).

If the point need be explored further, I agree with plaintiff that in this court and with respect to this question, privilege or immunity is governed by federal common law. State law is applicable only with respect to an element as to which State law supplies the rule of decision, and that would not be the case here. Rule 501, Fed.R.Evid.

The common law privilege which either spouse may invoke against disclosure of confidential marital communications is recognized in federal courts. *Trammel v. United States*, 445 U.S. 40, 45 n. 5, 100 S.Ct. 906, 909 n. 5, 63 L.Ed.2d 186 (1980). The question that plaintiff asked invaded that privilege. The Court in *Trammel* held that the privilege against adverse spousal testimony, an entirely distinct privilege, vests only in the witness spouse, who may neither be compelled to testify nor foreclosed from testifying.

**5.** Is it plausible, for example, that Congress intended that a debtor who invokes the attorney-

■■ Plaintiff argues that § 727(a)(6)(C) precludes the invocation of any privilege other than the Fifth Amendment. Although the statute is susceptible to that interpretation, there is no hint in its legislative history that Congress intended this abrupt departure:

"The sixth ground concerns refusal to testify. It is a change from present law, under which the debtor may be denied discharge for legitimately exercising his right against self-incrimination. Under this provision, the debtor may be denied discharge if he refuses to obey any lawful order of the court, or if he refuses to testify after having been granted immunity or after improperly invoking the constitutional privilege against self-incrimination." H.R.Rep. No. 595, 95th Cong., 1st Sess. 384–85 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 98–99 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5885, 6341.

I reject plaintiff's conclusion. I believe that all of the privileges recognized in Rule 501, Fed.R.Evid., may be invoked in a bankruptcy case to the same extent that they may in any other federal court, without jeopardizing the debtor's discharge.[5]

*May 5, 1987 Deposition*

At the close of this four-hour deposition taken by plaintiff in this adversary proceeding, the following occurred:

"Q. Mr. Lewis [plaintiff's counsel]: Okay. Did he [the debtor's husband] discuss the procedure he followed in those closings [of the sale of units in the Beacon 21 Development Corporation project] with you at any time?
A. The only times I've heard about them was from you.

.    .    .    .    .

Mr. Rappaport [attorney for debtor's husband]: We [referring to the debtor's husband and himself] are invoking the interspousal immunity that exists because there is an ongoing or threatened ongoing criminal prosecution. In the event the wife were called to testify, if

client privilege in bankruptcy forfeits his discharge by doing so?

we were to waive it here there would be some question to the extent we waived it in the criminal proceeding. So on that basis we're going to invoke it and request the wife not testify as to what she has been told by the husband in regard to that issue.

Mr. Lewis: Okay." Ex. 20 at 122–23.

The debtor neither claimed a privilege nor refused to answer the question. She answered it. We need not, therefore, determine whether under *Trammel, supra,* this was a privileged private marital communication which either spouse could claim or a privilege against adverse spousal testimony, which only the witness could claim. I believe the former was the case and plaintiff's failure to press the matter further fortifies that conclusion.

### Adverse Inference From Claim of Privilege

In possible recognition that its unpleaded attacks on the debtor's discharge under § 727(a)(6)(C) and (7) are insubstantial, plaintiff has again shifted his aim to argue that:

"Assuming that Sharon Mart's invocations of her fifth amendment privilege were proper, an adverse inference can properly be drawn that she had guilty knowledge as to wrongful diversions of funds and the knowing transfer and concealment of funds thereafter." *See, Baxter v. Palmigiano,* 425 U.S. 308, 318 [96 S.Ct. 1551, 1558, 47 L.Ed.2d 810] (1976). (CP 43 at 2).

The District Court has ordered:

"1. That the bankruptcy court did not err when it did not deny Sharon Mart discharge of debt on Bankruptcy Code section 727(a)(2)(A) and section 727(a)(4)(A) grounds, and

2. That the bankruptcy court erred in refusing to consider Sharon Mart's invocation of her Fifth Amendment privilege against self-incrimination and interspousal privilege as grounds for denial of discharge." (CP 37 at 19–20).

Apparently, plaintiff now suggests that because an inference may be drawn in this civil matter from the debtor's invocation of the Fifth Amendment, this court should now reconsider its findings and conclusions under § 727(a)(2)(A) and (4)(A). I doubt that such reconsideration is appropriate under this remand. If it is, I see no basis to do so.

The evidence of the invocation of the Fifth Amendment was then before me along with other evidence. I did not believe then, nor do I believe now, that the totality of the evidence supports either charge.

If plaintiff is now arguing that the inference to be drawn from invocation of the Fifth Amendment per se proves either of its other charges, that contention was appropriate before, not after, the District Court upheld this court's rejection of those other charges.

In any event, the inference has no such per se effect. As stated in *Lefkowitz v. Cunningham,* 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1 (1977):

"Baxter did no more than permit an inference to be drawn in a civil case from a party's refusal to testify. Respondent's silence in Baxter was only one of a number of factors to be considered by the finder of fact in assessing a penalty, and was given no more probative value than the facts of the case warranted."

### Conclusion

On remand, I find that the proof before this court does not support plaintiff's contentions that Sharon Mart's discharge be denied under § 727(a)(6) or (7) on account of her invocation of the Fifth Amendment or spousal immunity privileges. This finding does not require modification of the Judgment of June 22, 1987. (CP 32).