In re SOUTH FLORIDA TITLE,
INC., Debtor.

In re German LUENGO, Debtor.

In re Caridad LUENGO, Debtor.

Steven FRIEDMAN, Trustee, Plaintiff,

v.

German LUENGO and Caridad
Luengo, Defendants.

Bankruptcy Nos. 88–03891–BKC–TCB,
88–03896–BKC–TCB and
88–04348–BKC–TCB.
Adv. No. 89–0128–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

June 8, 1989.

See also, Bkrtcy., 92 B.R. 548.

Steven H. Friedman, Miami, Fla., for plaintiff.

William Manker, Miami, Fla., for defendants.

---

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The trustee in these three jointly administered bankruptcies seeks denial, under 11 U.S.C. § 727(a)(7), of the bankruptcy discharges of the two individual debtors, German (the debtor husband) and Caridad (the debtor wife) Luengo.[1]

Defendants' Answer invokes their Fifth Amendment and their common law interspousal immunity privileges to excuse their refusal to either admit or deny the trustee's allegations (CP 4). The Answer incorporates a motion for a grant of immunity under 11 U.S.C. § 344 (which only the Attorney General or U.S. Attorney may request; neither has done so) and a motion to dismiss. The motions were heard May 12. The motion to dismiss was abandoned at the hearing. The motion for grant of immunity was orally denied at the hearing and by a subsequent Order. (CP 32).

---

1. Plaintiff is proceeding with reference to § 727(a)(3) and § 727(a)(5) in, respectively, Counts 1 and 2. At trial, plaintiff voluntarily abandoned Counts 3 (Fraudulent Receipt of Funds) and 4 (Fraudulent Conveyance of Real Property).

At trial, all parties subscribed to this court's recent analysis in *In re Mart,* 90 B.R. 547 (Bankr.S.D.Fla.1988) of the interplay between the Bankruptcy Code as most recently amended, the Fifth Amendment, and common law interspousal immunity. The trustee has conceded that each defendant is entitled to invoke both privileges and all parties have stipulated that if either defendant were called to testify, each would invoke the privileges and would refuse to testify on that account.

The matter was tried May 19. The testimony of the trustee's three witnesses is undisputed. I now conclude that each discharge must be denied.

### The Debtor Husband and Wife Were 'Insiders'

 Section 727(a)(7) denies the discharge of any debtor who:

"has committed any act specified in paragraph (2), (3), (4), (5), or (6) of [that] subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case under [Title 11] or under the Bankruptcy Act, *concerning an insider.*" (Emphasis added).

The term "insider" with respect to a corporate debtor, "includes" all directors, officers, and "person[s] in control". § 101(30)(B).

The defendants were the initial and only directors of the bankrupt South Florida Title, Inc., a Florida Corporation, from its incorporation, on February 16, 1982, until its involuntary dissolution, on November 14, 1986. Throughout the life of this corporate debtor, the debtor wife was its vice-president, and both of the defendants were persons in control of the corporation. I find, therefore, that each defendant was an insider of South Florida Title, Inc. at all times relevant to this decision, that is to say, when their actions as more fully described below occurred.

The corporate bankruptcy began September 29, 1988 with the filing of an involuntary petition under chapter 7. The Order for Relief was entered October 16 (CP 46). All of the pertinent activity of the debtors, which is more fully described below, occurred within the year before that date.

### § 727(a)(3)

 The corporate debtor sold title insurance policies, as agent for title insurance underwriters, and also served as closing, escrow, and disbursing agent in connection with real estate closings where the title was insured by those policies. On Friday, August 19, 1988, the last day the corporation was open for business, the two Luengos were observed systematically removing files, documents and checkbooks from file drawers and filing cabinets in the business premises and stuffing them into plastic garbage bags. In mid-afternoon of that day, the Receiver appointed for the corporation by the State Court attempted to take possession of the corporate premises and its records, but found the premises locked and could not get in.

When he gained access the next day, he found the file drawers and cabinets open and the remaining records in disarray. He found that the records of 23 to 25 of the most recent closings, as reflected in the corporate transaction register, were missing, together with the corporate escrow account documents and other financial records. Despite extensive and repeated efforts, he has been unable since then to discover the whereabouts or recover any of these records from the Luengos or otherwise. All of the missing records are known to have been maintained on the premises up to August 19.

I infer from these undisputed circumstances that the missing records were removed from the business premises on Friday, August 19, 1988, by the Luengos and have since been concealed or destroyed by them. I also find that the Luengos were under a duty to keep and preserve the missing records and have failed to do so.

The State court receiver and Commonwealth, one of the title insurance under-

writers represented by the corporate debtor, has since been obliged to pay over $1 million in title insurance claims to vendees on account of undischarged liens which had been fully covered by escrowed funds entrusted to the Luengos on behalf of the corporate debtor.

An independent fraud examiner has inventoried and examined all of the corporate records which remain, and has verified that the essential transactional records had existed but had been systematically removed, together with the associated corporate financial books and records.

The Luengos, who alone were in complete control of the corporate records through August 19, 1988, have refused to explain the disappearance of any of these essential financial and business records, and have refused to produce them, invoking their privileges against self-incrimination.

I agree with the trustee that it is appropriate for this Court, in this civil matter, to draw a negative inference from the invocation by the each of the Luengos of their Fifth Amendment privileges. *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *RAD Services, Inc. v. Aetna Casualty & Surety Co.*, 808 F.2d 271 (3rd Cir.1986); *In re Stelweck*, 86 B.R. 833 (Bankr.E.D.Pa.1988).

With that inference, but also from the evidence before me without the benefit of that inference, I find that, during the year preceding the filing of the bankruptcy petition for South Florida Title, Inc., each of the defendants has deliberately concealed or destroyed and has failed to preserve recorded information, including books, documents, records and papers, from which the financial condition and business transactions of the bankruptcy debtor, South Florida Title, Inc. (of which they were then insiders) might be ascertained.

I conclude that each defendant has, therefore, committed an act specified in § 727(a)(3) and that the bankruptcy discharge of each defendant must, therefore, be denied under the provisions of § 727(a)(7).

## § 727(a)(5)

■ On April 8, July 29, and August 3, 1988, four real estate closings were conducted by the corporate debtor, which then became the escrow and disbursing agent to satisfy various outstanding liens from loan proceeds advanced by J.I. Kislak Mortgage Corp. to the respective vendees.

Liens in the total amount of $184,291.53, which should have been satisfied with funds entrusted to the Luengos on behalf of the corporation, were not satisfied and the title insurance underwriter, Commonwealth, was required in each instance to make good the loss resulting from the debtors' failure to do so. The funds to satisfy these liens have been traced into a corporate escrow account under the complete and exclusive control of the Luengos. The balance of the escrow account on August 19, 1988, when the corporation closed its doors, was only $5,115.64. It had a negative balance when that account was closed on September 30, 1988.

With consideration of the inference that arises in this action from defendants' invocation of the Fifth Amendment and, independently, without that inference, I find that each of the defendants, though responsible to do so, has failed to this date to provide any explanation for the loss of the funds in question and the deficiency in the corporate escrow account to meet the corporate obligations as escrow and disbursing agent.

I conclude, therefore, that each defendant has also committed an act specified in § 727(a)(5) and that, accordingly, the bankruptcy discharge of each defendant must also be denied for that reason under the provisions of § 727(a)(7).

## CONCLUSION

As is required by B.R. 9021, a separate judgment will be entered denying the discharges of the individual debtors, German

and Caridad Luengo under 11 U.S.C. § 727(a)(7). Costs may be taxed on motion.

DONE and ORDERED.