### In re TRANSPORTATION MANAGEMENT INC., Debtor.

**Susan Shirock DePaola, Trustee, Plaintiff,**

v.

**Glenis Hollingsworth, Kathy Hollingsworth, and George Hutchinson, Defendants.**

Bankruptcy No. 00–2359–WRS.

Adversary No. 00–229–WRS.

United States Bankruptcy Court, M.D. Alabama.

April 12, 2002.

Susan Shirock DePaola, Samford and DePaola, Montgomery, AL, for Plaintiff/Trustee.

Joseph W. Warren, Capouano, Smith, Warren & Klinner, Montgomery, AL, for Hollingsworths.

James G. Henderson, Pritchard, McCall & Jones, LLC, Birmingham, AL, for Hutchinson.

## *MEMORANDUM DECISION*

WILLIAM R. SAWYER, Chief Judge.

These two Adversary Proceedings were consolidated by order of this Court dated June 27, 2001. (Doc. 15). Adversary Proceeding No. 00–229, styled *Susan Shirock DePaola, Trustee v. Glenis Hollingsworth, Kathy Hollingsworth and George Hutchinson (In re Transportation Management)*, is a two count complaint brought by the Trustee seeking "turnover" of books and records of the Debtor corporation, pursuant to 11 U.S.C. § 543 and an accounting. Adversary Proceeding No. 01–096, styled *Susan DePaola, Trustee v. Glenis Hollingsworth and Kathy Hollingsworth (In re Hollingsworth)*, is an objection to the Hollingsworth's discharge in their Chapter 7 bankruptcy case. The consolidated Adversary Proceedings were called for trial on November 1, 2001. Present were Plaintiff Susan DePaola, Trustee, Joseph Warren, counsel for Glenis Hollingsworth and Kathy Hollingsworth, who were also present in person. At the commencement of the trial, DePaola moved to dismiss her claims against Defendant George Hutchinson. The Court, having heard the evidence, concludes that judgment should be entered in favor of Plaintiff Susan DePaola, Trustee, and against Defendants Glenis Hollingsworth and Kathy Hollingsworth. Judgment will be entered by way of a separate document. In addition, the Court will enter a separate order of dismissal as to the claims against George Hutchinson. The Court's Findings of Fact and Conclusions of Law follow.

## I. FINDINGS OF FACT

### A. Stipulated Facts

The parties filed a written stipulation as to some of the facts of this case. (Doc. 18). The Court hereby adopts the stipulated facts as findings of fact of this Court. The following is a summary of those facts.

Transportation Management, Inc., was an Alabama corporation which was incorporated on June 26, 1998. The ownership of the corporation's stock, as of January of 1999, and all times subsequent, was as follows: Glenis Chip Hollingsworth 510,000 shares (58%), Bonnie Buswell 120,000 shares (13%), Len Bryant 50,000 shares (6%), and George Hutchison 200,000 shares (23%).

Pursuant to a Stock Purchase Agreement dated December 9, 1998, TMI acquired Buswell Transport from Bonnie Buswell for $870,000 and an employment contract between TMI and Richard Buswell. TMI was in the trucking business, however it did not own or hold any operating authority from the Interstate Commerce Commission. Glenis and Kathy Hollingsworth were employed by TMI on a full-time basis until March of the year 2000, when they voluntarily terminated their employment.

### B. The Court's Findings of Fact

The Court, having heard the testimony of the witness, having had the opportunity to observe their demeanor and having examined the documents entered into evidence, makes its findings of fact.

Prior to the purchase of Buswell Transport in 1998, the Hollingsworths were engaged in the trucking business through an entity named Tramat or Transportation Matters. By Hollingsworth's testimony, Tramat had 7 or 8 trucks which were leased to a carrier which was not a related corporation. Hollingsworth did not recall whether Tramat was incorporated. A business such as this is relatively simple and it did not appear that Hollingsworth had difficulty managing the business or properly accounting for its business activities.

In 1998, the nature of Hollingsworth's business changed considerably when he acquired Buswell Trucking and brought George Hutchinson into the business.[1] Hutchinson invested $590,000 in the business and served as secretary of Transportation Management, Inc., but did not work there on a day to day basis. Transportation Management purchased 70 trucks in conjunction with the Buswell transaction.

Transportation Management may have had as many as nine affiliated corporations. The evidence revealed that the following corporations had some kind of connection with Transportation Management: G & B Supply, Clark, Bama Trucking, Buswell, Produce Logistics, On Time, Chas. Patterson, Cargo Express and Guardian Logistics. The precise nature of the relationships among these entities was not made clear at trial. However, Transportation Management had a considerable number of transactions with as many as nine entities which were not "arms length" in nature.

The nature of the business activity carried out by Hollingsworth after the Buswell purchase changed considerably. First, the size of the business increased ten-fold. Second, Transportation Management was not a carrier and therefore had to carry on its business through affiliated entities which had operating authority from the Interstate Commerce Commission to carry on operations as a motor carrier. Before discussing the changes in the business of Transportation Management and Hollingsworth, it would be useful to review the regulatory scheme in which this business operated. A corporation may not operate as a carrier of goods unless it is registered with the Department of Transportation. *See* 49 U.S.C. §§ 13901–02; 49 C.F.R. § 365.101, *et. seq.* As Transportation Management was not a carrier, that is it does not hold a certificate of authority from the Department of Transportation, it was required to lease its vehicles to carriers (corporations which held certificates of authority). Moreover, Federal law regulates such leases. 49 U.S.C. § 14102; 49 C.F.R. §§ 376.11–376.12. In general terms, the regulations require that the carrier, or lessee, maintain at least nominal control over the transportation service to be performed. *Id.* The carrier (the corporation which holds the operating authority) bills the shipper for the transportation services provided and pays an amount for equipment rental to the lessor of the equipment, which in this case was Transportation Management. In addition, insurance and other administrative costs are borne by the carrier, while the lessor bears the costs related to the actual transportation of the goods. These costs consist primarily of the purchase and maintenance of the truck and the payment of the driver. In some instances, Transportation Management would pay a carrier a nominal charge to "run under" its authority but assume virtually all of the costs, including insurance and administrative costs.[2] Therefore, every load of freight hauled by Transportation Management, after the Buswell purchase, would require an accounting system which was capable of dividing costs be-

---

1. A copy of the Stock Purchase Agreement whereby Transportation Management purchased Buswell Transport was admitted into evidence as Plaintiff's Exhibit 3. A copy of Buswell Transport's contract with Southland Distribution was admitted into evidence as Plaintiff's Exhibit 4.

2. Such arrangements are necessary to comply with Federal law. *See* 49 U.S.C. § 14102. These efforts, to at least nominally comply with the regulations, complicate considerably the bookkeeping required of one who becomes a debtor in a bankruptcy proceeding. *See* 11 U.S.C. § 727(a)(3).

tween two or more affiliated entities and properly allocating expenses to the appropriate entity. Where expenses are not properly allocated, in effect a transfer is made from the entity to which the expense should be properly charged to the entity which actually bears the expense.

This problem may be illustrated by way of the following hypothetical. Assume that there are three parties to an undertaking to transport a truckload of freight who will be called Carrier, Lessor and Affiliate. Assume further that the Carrier holds a certificate of authority from the Department of Transportation which authorizes it to transport property for hire. Assume further that the Lessor owns a truck which is to be used to provide the transportation services. Finally, assume that Affiliate has no direct involvement in the transportation of the freight.

Under this hypothetical, the Carrier would bill the party for whom the transportation services are performed and pay the Lessor a fee for the use of the equipment and the provision of a driver. The Lessor would be responsible for paying the expenses incidental to the actual transportation such as depreciation of the vehicle, fuel, repairs and supplies for the vehicle, such as tires and the wages for the driver. The Carrier would be responsible for insurance, billing and other administrative services. In some instances, expenses attributable to the Lessor may actually be borne by an Affiliate. For example, Lessor's vehicle may be in need of tires which are purchased on credit and charged to the account of an Affiliate. To insure a proper accounting, the accounting system must be sophisticated enough to track and properly allocate all expenses to the appropriate entity.

Hollingsworth was the president of Transportation Management at the time of the Buswell purchase in 1998 until March of the year 2000. Kathy Hollingsworth, who is the co-debtor in Case No. 00–5259 and the co-defendant in this Adversary Proceeding, was the chief bookkeeper. Their involvement in the operations was such that the Court finds that they exercised a sufficient degree of control over the corporation so as to be considered "insiders" under the Bankruptcy Code. *See* 11 U.S.C. § 101(30)(B); *infra* Part D(2).

Mrs. Hollingsworth, the chief bookkeeper, has a college degree in business but did not major in accounting. Moreover, she is not an accountant by trade. While she had some general knowledge of bookkeeping and accounting, she was not competent to keep the books and records of Transportation Management after its purchase of Buswell Transport and the 70 trucks.

Perhaps recognizing his wife's limited knowledge of accounting, Hollingsworth retained Lyvonnia Poppell, a Certified Public Accountant with Jackson Thornton & Co., in December of 1998. Poppell was hired to prepare a set of books and bring the corporation's books up to date and to prepare 1998 tax returns. *See* Plaintiff's Exhibit 15. Poppell noted that there were few internal controls over the accounting functions and she recommended that Transportation Management hire an accountant on a full time basis. *Id.* Poppell testified that she and Hollingsworth had a dispute as to the preparation of the 1998 Federal Income Tax Return. Poppell testified that Hollingsworth wanted to treat the Buswell purchase as an asset purchase and depreciate the physical assets. In Poppell's opinion that was not appropriate as the form of the transaction was that of a stock purchase.

By May of 1999, Poppell was troubled by her difficulty in communicating with Hollingsworth and the difficulty in having him make necessary decisions. Most of Poppell's contact was with Mrs. Hollings-

worth who did not appear to have the expertise or authority to implement the management decisions which Poppell felt were necessary. Poppell testified that she had a meeting with Hollingsworth in early May of 1999, where Hollingsworth left the meeting without resolving the pending business and without offering any explanation. Poppell terminated her firm's engagement by her letter of May 7, 1999. Plaintiff's Exhibit 16.

Shortly after Poppell terminated her firm's engagement, Hollingsworth retained Phyllis Ingram of the firm of Carr, Riggs & Ingram. Ingram testified that by July of 1999, she had prepared an updated set of books and records for Transportation Management as of May of 1999. Ingram testified that her services were terminated during the summer of 1999. The books and records were not kept up to date by Transportation Management after Ingram left. While some entries for disbursements were made after Ingram's departure, a complete set of records was not maintained. Transportation Management did not hire an accountant as recommended by Poppell, nor was another accounting firm retained. For reasons not adequately explained by Hollingsworth, Transportation Management did not make any genuine effort to keep an accurate set of records after Ingram's departure. In addition to preparing a set of accounting records, Ingram prepared a 1998 tax return. However, Ingram was not made aware of the nature of the Buswell purchase. Thus, Hollingsworth avoided the conflict over the proper method to account for the Buswell purchase that he had with Poppell by misleading Ingram as to the nature of transaction. The 1998 tax return prepared by Ingram was inconsistent with the return prepared by Poppell.

Kathy Hollingsworth testified that she accounted for the inter-company transactions between Transportation Management and its affiliates by way of manual "due to" and "due from" records which she kept in three ring binders which were in her office. As Ingram, and Poppell before her, had gone to considerable efforts to automate the accounting records of Transportation Management, it strikes one as anomalous that Mrs. Hollingsworth would keep manual records on one of the most critical aspects of the accounting system. This appears to be one example of the lack of internal controls over the accounting system mentioned in Poppell's May 5, 1999 letter. *See* Plaintiff's Exhibit 15.

By March of the year 2000, Hutchinson became dissatisfied with Hollingsworth's management of Transportation Management. On March 2, 2000, following Hollingsworth's refusal to show Hutchinson Transportation Management's business records, Hutchinson forced Hollingsworth to withdraw from holding office or sitting on the board of directors. *See* Plaintiff's Exhibit 5.

Hutchinson took control of Transportation Management and attempted to rescue the business. The three-ring binders kept by Kathy Hollingsworth were not with the books and records of the corporation at the time Hutchinson took possession and control of the business. Kathy Hollingsworth testified that she left the three-ring binders in her office and denied taking or destroying those records. Glenis (Chip) Hollingsworth testified that he did not take the records and that he did not know where they were. The Court, having heard the testimony of Hollingsworth, Mrs. Hollingsworth and George Hutchinson infers from the evidence that the Hollingsworths removed the three-ring binders containing the "due to" and "due from" entries from the office of Transportation Management. The Court finds that Hollingsworth was not forthright and that his

testimony was not credible. Under cross examination by the Trustee, Mrs. Hollingsworth was hostile and evasive and her testimony was not credible. Considering all of the evidence, the Court finds that Defendants Glenis Hollingsworth and Kathy Hollingsworth concealed or destroyed books, documents, records and papers, from which Transportation Management's financial condition and their financial condition might have been ascertained.

Where there are inadequate controls over inter-company accounting procedures, it is not possible to determine with any reasonable degree of precision, how much each related entity owes the other. On April 18, 2000, Hutchinson wrote Hollingsworth, making demand for the sum of $87,429.03 for tires, which Hutchinson claims the latter improperly charged to the account of Guardian Logistics, one of Hutchinson's entities. The following language is instructive: "There may be other invoices and bills for purchases you made for your own use that you have billed to us; as we find them we will forward them on to you for immediate payment." Plaintiff's Exhibit 6. Six weeks after Hutchinson took control of Transportation Management, he still could not sort out inter-company transactions. In this instance, it is alleged by Hutchinson that Michelin tires had been ordered for the benefit of Transportation Management and charged to Guardian Logistics. The books and records of Transportation Management are inadequate to make any determination as to the proper disposition of inter-company items.

The Court heard testimony from a third accountant, Kenny Craik of Aldridge, Borden & Co. Craik was retained by a corporation which was interested in purchasing Transportation Management. It was Craik's task to review the books and records of Transportation Management and advise as to his findings. Craik could not pinpoint the precise date that he looked at the records, however, he testified that it was early in the year 2000, while Mr. and Mrs. Hollingsworth were still employed by and active in the business. Therefore, Craik's review necessarily took place at some time in January or February of 2000.

Craik testified that the corporate bank accounts had not been reconciled and that there were no cash receipts or cash disbursements records. Craik further testified that the last complete records were kept as of May of 1999, which was when Ingram stopped working on the records. Craik also testified that he was not given a reason as to why the records were not up to date. The Court concludes that after Ingram's services were terminated, Hollingsworth made a conscious decision to terminate any systematic effort to keep records. The Court further finds that the failure to keep and maintain such records was not justified under the circumstances of this case.

The Court finds that the books and records were inadequate for three reasons. First, the system itself was inadequate to track inter-company transactions. Second, the accounting system was not kept up to date after Phyllis Ingram was discharged. Third, the manual "due to" and "due from" records were destroyed or secreted by the Hollingsworths shortly after Hutchinson took control of Transportation Management, Inc. All three of these deficiencies were intentionally imposed upon Transportation Management by the Hollingsworths most assuredly in an effort to obscure unlawful transfers of property from Transportation Management to other entities controlled by the Hollingsworths.

## II. Conclusions of Law

### A. Jurisdiction

This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1334. This is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (J).

### B. Introduction

In this consolidated case, the plaintiff is the Trustee in the corporate case (the TMI bankruptcy) (Case No. 00–02359) and a creditor in the personal case (the Hollingsworth bankruptcy) (Case No. 00–05259). The Trustee brought suit in the TMI case to require the Debtors to turnover relevant books and records of the corporation and to file an accounting. This action was based upon 11 U.S.C. § 543 and state law grounds. The Trustee also seeks to deny discharge in the Hollingsworth case pursuant to 11 U.S.C. § 727(a)(7). The adversary proceedings were consolidated by order of this Court, dated June 26, 2001, because there are common questions of law and fact involved in the two adversary proceedings.

In a Chapter 7 case, the goal of the debtor is to obtain discharge of his indebtedness. *See* 11 U.S.C. § 727; *Colonial Bank v. Wynn (In re Wynn)*, 261 B.R. 286, 298 (Bankr.M.D.Ala.2001). Section 727 provides that discharge *shall* be granted unless one of the listed exceptions applies. *See* § 727. The Trustee or a creditor may object to discharge pursuant to 11 U.S.C. § 727(c)(1). If the objection is successful, the debtor remains responsible for his debts.

For the reasons set forth below, this Court denies the Debtors discharge pursuant to 11 U.S.C. § 727(a)(3) and (7). The Court dismisses the claim for accounting and turnover of the corporate books upon its finding that the records sought by the Trustee were destroyed or secreted by the Debtors.

**3.** The Trustee's motion to file an accounting was originally filed against the Hollingsworths and George Hutchinson. The Court dismissed the claims against George Hutchin-

### C. Motion to Turnover/File an Accounting

The Trustee filed a motion in the TMI bankruptcy to require the Hollingsworths to turn over books and records of the corporation and to file an accounting. The motion is based in part on Section 543 of the Bankruptcy Code and in part on state law grounds. For the reasons set forth below, the Court DENIES this motion.

### 1. 11 U.S.C. § 543

■ The Trustee's motion to turnover books and records, filed in the TMI bankruptcy, was based in part on 11 U.S.C. § 543(b). Section 543 provides in part:

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody or control of such custodian.

11 U.S.C. § 543.

This section deals with the requirement that a "custodian" turnover property of the debtor's estate to the trustee. As the section is directed to a "custodian," the first question before the Court is whether the Hollingsworths are custodians for purposes of the Bankruptcy Code.[3]

son by a separate order of dismissal and does not reach the question of whether he would qualify as a "custodian." As Hutchinson controlled TMI when the corporation filed their

"Custodian," as used in the Bankruptcy Code is defined in 11 U.S.C. § 101(11):

In this title—

(11) "custodian" means—

(A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

(B) assignee under a general assignment for the benefit of debtor's creditors; or

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).

■ "The term 'custodian' typically refers to entities who have been authorized to liquidate or otherwise take charge of a debtor's property for the benefit of the general body of creditors." *Tankson v. Yao, Ltd. (In re Tankson)*, 1991 WL 174653, *8 (Bankr.N.D.Ill.1991) (citing *In re Cash Currency Exchange, Inc.*, 762 F.2d 542 (7th Cir.1985); *In re Reilly*, 105 B.R. 59, 61–62 (Bankr.D.Mont.1989)). A custodian typically takes control of a distressed entity in order to preserve assets for the benefit of creditors. *In re Tankson*, 1991 WL 174653, at *8.

The Senate Report for Section 101(11) further fleshes out this concept:

It is defined to facilitate drafting, and means prepetition liquidator of the debtor's property, such as an assignee for the benefit of creditors, a receiver of the debtor's property, or a liquidator or administrator of the debtor's property. The definition of custodian to include a receiver or trustee is descriptive, and

not meant to be limited to court officers with those titles. The definition is intended to include other officers of the court if their functions are substantially similar to those of a receiver or trustee.

S.Rep. No. 989, 95th Cong, 2d Sess. 23 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5809.

The Hollingsworths managed the operations of TMI until March 2, 2000. At that point, they resigned and performed no further actions on behalf of TMI or its creditors. They are not, and never were, "custodians" for purposes of this section. Specifically, they were not appointed trustee or receiver in any case; they were not assignees under a general assignment for the benefit of TMI's creditors; nor were they appointed to enforce a lien against TMI or to administer the property of TMI for the benefit of creditors.

Because the Court finds that the Hollingsworths are not "custodians" for purposes of Section 543, the Trustee's motion is denied to the extent it relies upon this section. The Court notes that the Trustee could seek turnover of the books and records in this case by proceeding under 11 U.S.C. § 521(4). Under that section the Hollingsworths, as Debtors, would be required to turnover the books and records to the Trustee. *See* 11 U.S.C. § 521(4).

■ However, the Court does not reach this issue because it was not presented by the Trustee. Further, the Court expressly finds that books and records sought by the Trustee were either destroyed or secreted by the Hollingsworths. For that reason, the Court feels that an order requiring turnover the books and records would be futile in this case.

Chapter 11 bankruptcy petition on May 5,

2000, he would likely qualify as a custodian.

### 2. State Law Grounds

The Trustee's claim is also dismissed to the extent that it relies upon state law grounds. Based on the Trustee's failure to allege specifically the grounds on which she relies and the finding that the records sought have been destroyed or concealed, the Court can discern no reason to examine this claim further.

### D. Section 727(a)(3) and (7)

THE DEBTORS CONCEALED, DESTROYED, FALSIFIED OR FAILED TO KEEP OR PRESERVE RECORDS FROM WHICH THEIR FINANCIAL CONDITION AND BUSINESS TRANSACTIONS MIGHT BE ASCERTAINED

### 1. Section 727(a)(3)

Section 727(a)(3) provides that:

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

■ The purpose of this section is "to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Colonial Bank v. Wynn (In re Wynn)*, 261 B.R. 286, 299 (Bankr. M.D.Ala.2001) (citing *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir.1999) (citations omitted)). The Trustee must receive enough information so as to be able to "trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions." *In re Wynn*, 261 B.R. at

299 (citation omitted). The burden of proof in an action under Section 727 is on the plaintiff to prove his allegations by a preponderance of the evidence. Fed. R. Bankr.P. 4005; *see Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992) (citing *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

■ In the instant case, it is impossible for the Trustee to ascertain the financial condition of TMI. The Hollingsworths effectively managed and controlled the operations of TMI from June, 1998 until March, 2000. Glenis Hollingsworth served as the president of TMI and Kathy Hollingsworth as chief bookkeeper. During their tenure, the Debtors allowed the operation and management of TMI under the names of some of their other companies, including "CMI", "On–Time Trucking" and "Cargo Express." TMI's financial records were also intermingled with records from Debtors other companies.

The Debtors kept track of inter-company transfers through a manual "Due To/Due From" system that Kathy Hollingsworth managed. The entries were done by hand and kept in three-ring binders in Kathy Hollingsworth's office. Such a system appears to be wholly inadequate for a business form as complex as that run by the Debtors.

■ As a general rule, the more complex a business form, the more complex the accounting system should be. *See Meridian Bank v. Alten (In re Alten)*, 958 F.2d 1226, 1230 (3d Cir.1992) (finding that factors constituting sufficient record keeping vary with the facts of each case) (citation omitted); *In re Caulfield*, 192 B.R. 808, 822–23 (Bankr.E.D.N.Y.1996) ("A sophisticated debtor is generally held to a higher level of accountability in record keeping, and the more complex the debt-

or's financial situation, the more numerous and detailed the debtor's financial records should be.") (citation omitted). The Court may consider such factors as the size and complexity of the debtor's business, the sophistication of the debtor and the debtor's business experience in determining the adequacy of records. *In re Wiess,* 132 B.R. 588, 592 (Bankr.E.D.Ark.1991) (citations omitted); *see also In re Caulfield,* 192 B.R. at 823.

In the instant case, the Court finds that the manual "Due To/Due From" records kept for inter-company transactions would be inadequate to allow the Trustee to ascertain the financial condition of the corporation. TMI went to considerable lengths to automate their accounting records through the efforts of the two accountants. Despite this, Mrs. Hollingsworth continued to maintain these inter-company records manually. As this was one of the most critical aspects of the accounting system, the Court can discern no good faith reason why Mrs. Hollingsworth would ignore the advice of the accountants and keep these records manually.

The Court does not need to reach the adequacy of the records, however, as they have disappeared and were not available for the Trustee or the Court to examine. The evidence adduced at trial showed that the "Due To/Due From" binders existed and were present at TMI as of March 1, 2000. The Debtors resigned from TMI on March 2, 2000. By that time, the three-ring binders kept by Mrs. Hollingsworth were no longer with the books and records of the corporation. The Court finds that the Debtors destroyed or secreted the "Due To/Due From" binders which reflected the inter-company transfers.

■ The Court finds that the Trustee has met her burden of proving the objection under Section 727(a)(3). After this initial burden is met, the burden shifts to the debtor to provide justification. *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir.1984); *In re Wynn,* 261 B.R. at 302–03 (citation omitted).

■ What specifically constitutes justification has not been addressed by the courts. "Justification depends largely on what a normal, reasonable person would do under similar circumstances." *In re Alten,* 958 F.2d at 1231 (noting that the inquiry should factor in the debtor's sophistication, experience and education). The required showing likely includes good faith and businesslike conduct. *In re Wynn,* 261 B.R. at 303 (citations omitted). In the instant case, the Hollingsworths made no showing of good faith or businesslike conduct in relation to the disappearance or concealment of the "Due To/Due From" binders. In fact, the Debtors maintained that they had no knowledge about what happened to those records. The Court finds that this testimony of the Debtors was not credible and concludes that each Debtor committed an act specified in Section 727(a)(3).

### 2. Section 727(a)(7)

Section 7(a)(7) states:

(a) The court shall grant the debtor a discharge, unless—

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case under this title or under the Bankruptcy Act, concerning an insider.

11 U.S.C. § 727(a)(7).

■ The purpose of Section 727(a)(7) is to bind "related cases together so that misconduct in one case by an individual may be chargeable against that individual in other related proceedings."

*Whiteside F.S., Inc. v. Siefkin,* 46 B.R. 479, 480–81 (N.D.Ill.1985). *See also Barclays/American Business Credit, Inc. v. Adams (In re Adams),* 31 F.3d 389, 394 (6th Cir.1994) (finding that corporate Chapter 11 debtor was an insider of Chapter 7 debtors for purposes of 727(a)(7)). Section 727(a)(7) is designed so as to

> prevent debtors who are involved in several bankruptcy proceedings from failing to cooperate in a proceeding in which their own discharge is not at issue such as a corporate proceeding involving a partner or relative and then, subsequently or simultaneously, obtaining an individual discharge in another case.

*Siefkin,* 46 B.R. at 480–81. The burden under this section is on the party objecting to discharge. *In re Scott,* 172 F.3d at 966 (discussing standard of proof applicable to denials of discharge under Section 727(a)).

■ In the instant case, the Hollingsworths are involved in the TMI bankruptcy by virtue of their ownership and control of the corporation. They have not cooperated with the Trustee in that case in that they have destroyed or concealed books and records sought by the Trustee for the purpose of ascertaining the financial condition of TMI, an act specified in Section 727(a)(3). For the reasons set forth below, their actions in the corporate bankruptcy will prevent discharge in their personal case. *See also Friedman v. Luengo (In re Luengo),* 102 B.R. 266, 268–69 (Bankr. S.D.Fla.1989) (denying discharge in a personal bankruptcy to insiders of corporate debtor on a finding that they concealed or destroyed corporate records); *Campbell v. Macartie (In re Macartie),* 64 B.R. 335, 341 (Bankr.W.D.Pa.1986) (denial of discharge to individual debtor on the basis of his actions in corporate bankruptcy cases).

The Court, having already found that both Debtors committed an act specified in paragraph (3), must now address when that act was committed and whether the Debtors are "insiders" for purposes of this section.

The evidence presented at trial leads the Court to conclude that the "Due To/Due From" binders were destroyed or concealed on March 2, 2000. The evidence showed that the binders existed and were present at TMI at all times before the Debtors resigned on March 2, 2000. TMI filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on May 5, 2000. That case was converted to a Chapter 7 case on July 27, 2000. The Debtors then filed their personal bankruptcy petition, under Chapter 7 of the Bankruptcy Code on September 27, 2000. The pertinent activities the destruction or concealment of the binders—occurred within one year before the date of filing the personal bankruptcy petition.

The Hollingsworths are "insiders" for purposes of the TMI bankruptcy pursuant to the definition of insider contained in Section 101(31) of the Bankruptcy Code. Section 101(31) provides, in relevant part:

> (31) "insider" includes—
>
> . . .
>
> (B) if the debtor is a corporation—
>
> (i) director of the debtor;
>
> (ii) officer of the debtor;
>
> (iii) person in control of the debtor;
>
> (iv) partnership in which the debtor is a general partner;
>
> (v) general partner of the debtor; or
>
> (vi) relative of a general partner, director, officer, or person in control of the debtor;

11 U.S.C. § 101(31)(B).

The evidence presented at trial showed that, at all times relevant to the case, Glenis Hollingsworth owned 58% of the TMI stock. Furthermore, both Debtors were employed by TMI on a full-time basis

from June, 1998 until March, 2000. Glenis Hollingsworth served as president of the corporation and Kathy Hollingsworth served as chief bookkeeper. Glenis Hollingsworth also served on the Board of Directors. In these capacities, the Debtors controlled the operations of TMI, including operational control of its vehicles and employees as well as control over its accounting functions and records.

This evidence supports the conclusion that Glenis Hollingsworth is an "insider" pursuant to 11 U.S.C. § 101(31)(B)(i), (ii), (iii) and (vi). Kathy Hollingsworth is an "insider" pursuant to 11 U.S.C. § 101(31)(B)(ii),(iii) and (vi).

Having found that each Debtor committed an act specified in Section 727(a)(3) within one year before the date of filing their personal bankruptcy petition and further that each Debtor is an insider with respect to the TMI bankruptcy, the Court concludes that the Debtors should be denied discharge pursuant to 11 U.S.C. § 727(a)(7).

### III. Conclusion

For the foregoing reasons, the Debtors are DENIED their discharge pursuant to 11 U.S.C. § 727(a)(7). The Trustee's action for turnover and accounting is DISMISSED on the grounds that Debtors are not custodians for purposes of 11 U.S.C. § 543. Furthermore, the Court is of the view that an order for turnover and accounting would be futile in this case. Separate judgments consistent with this memorandum decision will be entered by the Court.