633 F.2d 98
 6 Bankr.Ct.Dec. 1423, Bankr. L. Rep. P 67,808,
30 UCC Rep.Serv. 354
 Thomas G. LOVETT, Jr., as Trustee in Bankruptcy of Richard
Garmaker, Bankrupt, Appellant,
v.
Joseph M. SHUSTER and Ambrose H. Rajamannan, a/k/a A. H. J.
Rajamannan, Appellees.
 No. 80-1316.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 8, 1980.
Decided Oct. 22, 1980.
Rehearing Denied Nov. 13, 1980.
 
 Allen I. Saeks, Minneapolis, Minn., for appellant, Thomas G. Lovett, jr.
 Richard D. Donohoo, St. Paul, Minn., for appellees Joseph M. Shuster and Ambrose H. Rajamannan.
 Before BRIGHT, ROSS and STEPHENSON, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 Thomas G. Lovett, the trustee in bankruptcy of Richard E. Garmaker, sought in the district court[1] to have the transfer of certain property of the bankrupt to defendant Joseph M. Shuster set aside as a fraudulent conveyance and voidable preference in violation of Sections 67(d) and 60(a) of the prior Bankruptcy Act, 11 U.S.C. §§ 107 and 96, respectively.[2] The trustee also alleged that the sale of the collateral by Shuster was commercially unreasonable, and sought damages under Section 70 of the Act, 11 U.S.C. § 110. Lovett appeals from the final judgment of the district court in favor of the defendants, and we assume jurisdiction pursuant to Section 24 of the Act, 11 U.S.C. § 47.
 
 
 2
 The history of this case, briefly, is as follows: An involuntary petition in bankruptcy was filed against Richard Garmaker on July 2, 1974. In 1976, the trustee filed this suit to restore to the bankrupt estate the value of several assets pledged to Joseph Shuster as security for his 1974 loan of $160,000 to Garmaker. In November of 1977, the complaint was amended to name as an additional defendant Ambrose Rajamannan, who purchased some of the pledged assets from defendant Shuster. On February 8, 1979, the Bankruptcy Court entered its final order denying certain exclusions to Garmaker. The defendants subsequently filed a motion for summary judgment in the present case, and the trustee filed an alternative motion to strike the affidavit of one of the defendants' attorneys, John C. Johanneson. Both motions were denied on December 10, 1979. The case was tried to the court on January 14-16, 1980, and the final order was entered on March 20, 1980.
 
 
 3
 On appeal, the trustee raises questions concerning both the legal and factual conclusions of the district court, and avers that the court's errors mandate a reversal of its final judgment and a new trial on all issues previously litigated. We disagree, and for the reasons set forth below we affirm the well reasoned decision of the district court.
 
 I.
 
 4
 The trial court's factual findings are as follows: On January 24, 1974, Joseph Shuster loaned $160,000 to Richard Garmaker. In return, Shuster received from Garmaker a promissory note for $160,000, a security agreement, a financing statement, and a pledge of certain property as security for the loan. The collateral consisted of 10,000 shares of International Cryo-Biological Services, Inc. (ICBS), 3429 shares of McAllister Properties, Inc., 50 shares of Creamery, Inc., and a promissory note for $92,760 from Chateau Shelard, a limited partnership. The Chateau Shelard note was secured by a second mortgage on real property owned by the limited partnership.
 
 
 5
 On July 2, 1974, the involuntary petition in bankruptcy was filed against Garmaker. On October 2, 1974, Shuster sold the shares of ICBS stock for $67,368 to Rajamannan, after giving notice of the sale to the trustee. The Chateau Shelard note was sold for $47,462. The sales were made over the objection of the trustee.
 
 
 6
 Judge Devitt noted that there were three determinative factual issues to be resolved before turning to the legal questions raised in the trustee's complaints. All three were resolved in favor of the defendants. First, in light of the trustee's claim that Garmaker's pledge of securities and the note constituted a voidable preference and a fraudulent transfer, the date of delivery of the collateral became material to the court's inquiry. Section 60(a)(1) provides that
 
 
 7
 (a) preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.
 
 
 8
 11 U.S.C. § 96(a)(1) (emphasis supplied). Section 67(d)(3), dealing with fraudulent transfers, provides, in relevant part, as follows:
 
 
 9
 Every transfer made and every obligation incurred by a debtor who is or will thereby be rendered insolvent, within four months prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent, as to then existing and future creditors * * *.
 
 
 10
 11 U.S.C. § 107(d)(3) (emphasis supplied). Accordingly, in order to escape the provisions of these sections, the transfer of the collateral had to have taken place before March 2, 1974, which marked the beginning of the four-month period preceding the July 2 filing of the petition. Although the court found that some of the securities were assigned to Shuster on or about March 7, 1974, during the four-month period, the court specifically found that the delivery of all of the collateral to Shuster had taken place on January 24. This finding is challenged on appeal.
 
 
 11
 Second, the district court was faced with the task of determining the value of the collateral transferred to Shuster. The court's valuation of the 10,000 shares of ICBS stock ($12,400) is also challenged on appeal. Finally, the district court had to determine the extent of Shuster's knowledge of Garmaker's financial condition in order to settle the issue of whether Shuster was a bona fide purchaser of the stocks within the meaning of Section 67(d)(6) of the Act. The court concluded that Shuster had "received the collateral in good faith and without knowledge or belief of Garmaker's intended use of the proceeds and that Shuster did not have reasonable cause to believe that Garmaker was insolvent." This finding is not specifically challenged on appeal, but is material to our consideration of the issues in question.
 
 
 12
 The three legal issues raised in the complaint were also resolved in favor of the defendants. First, relying on the factual findings and on an earlier order of December 13, 1980,[3] the court concluded that the conditions for voiding a preferential payment under Section 60 had not been met. In denying defendants' motion for a summary judgment, the court earlier ruled that the "transfer" of collateral for purposes of Section 60(a) (and 67(d)) had taken place on the date of delivery of the collateral to Shuster, rather than on the date when the title to the collateral was actually assigned to him. Therefore, there was no showing that the transfer had occurred within four months of the filing of the petition. In addition, the court held that the trustee failed to prove that the transfer was for an antecedent debt or that Shuster had reason to know of Garmaker's insolvency at the time of the transfer. See 11 U.S.C. § 96(a)(1), supra.
 
 
 13
 Second, the district court disposed of the trustee's claim that the January 24, 1974 transaction constituted a fraudulent conveyance under Sections 67(d) (2)(a)-(d) and 67(d)(3).[4] Although the evidence led to the "irresistible conclusion" that Garmaker's conduct was motivated by an intent to hinder, delay or defraud his creditors, the court concluded that the transaction was for fair consideration and that the trustee had failed to establish that Shuster knew of Garmaker's intentions. Under the circumstance, the court held that Shuster was entitled to the protection of Section 67(d)(6), which reads as follows:
 
 
 14
 A transfer made or an obligation incurred by a debtor adjudged a bankrupt under this title, which is fraudulent under this subdivision against creditors of such debtor having claims provable under this title, shall be null and void against the trustee, except as to a bona fide purchaser, lienor, or obligee for a present fair equivalent value: Provided, however, That the court may, on due notice, order such transfer or obligation to be preserved for the benefit of the estate and, in such event, the trustee shall succeed to and may enforce the rights of such transferee or obligee: And provided further, that such purchaser, lienor, or obligee, who without actual fraudulent intent has given a consideration less than fair, as defined in this subdivision, for such transfer, lien, or obligation, may retain the property, lien, or obligation as security for repayment.
 
 
 15
 (Emphasis supplied.)
 
 
 16
 The court also ruled that the second proviso of Section 67(d)(6) protected Rajamannan's purchase of the ICBS stock from Shuster, even though Rajamannan may not have been a bona fide purchaser. The court reasoned that "(t)he purpose of (the second) proviso is presumably to assure that the trustee does not recover from nonfraudulent transferees except to the extent that the estate is diminished." Since the 10,000 shares were valued at the time of transfer as $12,400 and Rajamannan purchased them for $67,500, the court concluded that the trustee obviously would not have returned the $67,500 in exchange for the stock.
 
 
 17
 Finally, the trustee sought damages for Shuster's alleged commercially unreasonable sale of the collateral. As the trial court pointed out, Minn.Stat. § 336.9-507 provides the debtor with such a contractual cause of action, and it vested in the trustee in bankruptcy under Section 70(a)(6) of the Act, 11 U.S.C. § 110(a)(6). However, the court found that the trustee failed in carrying his burden of proving damages, and the cause of action was dismissed.
 
 II.
 
 18
 As mentioned previously, the trustee raises several legal and factual issues on appeal. We shall discuss the following: First, it is claimed that the trial court committed prejudicial error in considering the deposition testimony of John C. Johanneson, since the deposition was neither offered nor received into evidence at trial. Second, the trustee challenges the sufficiency of the evidence supporting the finding that the collateral was delivered on January 24. Third, it is alleged that the court erred in holding that a "transfer" of the collateral, for purposes of the Bankruptcy Act, took place upon the delivery of the collateral, rather than upon its assignment. Fourth, the court's valuation of the ICBS stock is challenged. We now turn to our analysis of these questions.
 
 
 19
 Johanneson's Deposition Testimony and the Sufficiency of the Evidence.
 
 
 20
 The trial court's finding that the collateral was delivered on January 24, 1974, was based, in part, on the deposition testimony of John C. Johanneson. The court's opinion specifically indicated that the deposition was considered. Since the deposition was neither marked nor received as an exhibit, its use in connection with the court's findings was erroneous. The question we are faced with, however, is whether the error is of the prejudicial nature that requires this court to reverse for a new trial. We hold that it is not.
 
 
 21
 The trustee claims that since the deposition could not have been received into evidence under Rule 32(a)(3) of the Federal Rules of Civil Procedure, the court's consideration of it constituted reversible error. In support of this proposition, the trustee cites the case of Salsman v. Witt, 466 F.2d 76, 77 (10th Cir. 1972). In Salsman, counsel specifically declined the trial court's invitation to offer certain depositions into evidence. Nevertheless, the trial judge announced that the direct examination of the witnesses would not be permitted to cover any of the facts set forth in the depositions, and the judge stated on record that "I am going to consider (the depositions)." The Tenth Circuit Court of Appeals reversed for a new trial on all issues, stating that
 
 
 22
 (i)t is clear to us that under none of the exceptions appearing in Rule 32(a) (3)(E) could the depositions of Salsman or Henry Witt have been used in lieu of their oral testimony, even if the depositions had been offered, which they definitely were not. So, under the circumstances, if the depositions of Salsman or Henry Witt had been offered into evidence under Rule 32(a)(3) in lieu of their oral testimony, it would have been error to receive them. A fortiori, it was also error for the trial court to use the depositions in question in connection with its findings.
 
 
 23
 Id. at 79.
 
 
 24
 We do not believe that the Salsman case supports the trustee's position. It is obvious that the court in Salsman based its finding of prejudicial error on the state of the record before it, which contained no evidence to support the disputed trial court finding other than the evidence which had erroneously been considered:
 
 
 25
 This particular point was considered in Processteel, Inc. v. Mosley Machinery Company, Inc., 421 F.2d 1074 (6th Cir. 1970), where the practice of using parts of depositions never offered in evidence was expressly disapproved. In that case it was held, however, that since there was ample evidence in the record, independent of the depositions in question, to support the trial court's findings, the judgment need not be reversed. In the instant case, we find no such independent supporting evidence.
 
 
 26
 Id. at 79-80. Similarly, the rule regarding the erroneous reception of evidence in cases tried to the court has been set forth in this circuit as follows:
 
 
 27
 In non-jury cases tried to the court, it is well settled that we will not reverse for the erroneous reception of evidence unless it appears that the competent evidence is insufficient to support the judgment or that the court was induced by incompetent evidence to make an essential finding which it would not otherwise have made. Friedman v. Fordyce Concrete, Inc., 8 Cir., 362 F.2d 386, 389; Joseph A. Bass Co. v. United States, to Use of Peter Kiewit Sons' Co., 8 Cir., 340 F.2d 842, 845. * * *
 
 
 28
 Holt v. Sarver, 442 F.2d 304, 307 (8th Cir. 1971). This circuit recognizes the rule that the erroneous admission of evidence does not require reversal where the error is harmless. See Grinder v. Southern Farm Bureau Casualty Insurance Co., 590 F.2d 741, 743 (8th Cir. 1979) (citing Rule 61, Fed.R.Civ.P.). Accordingly, we turn our attention to a review of the other evidence supporting the trial court's findings.
 
 
 29
 The court based its determination on the following evidence: Richard Garmaker's deposition testimony, which is in the record, clearly indicated that he delivered all of the collateral to Shuster on January 24, 1974, the day on which he received from Shuster a check for $160,000. Shuster testified that he received the collateral from Garmaker on the same day, after giving him the check. Although Shuster did not recall opening the envelope containing the collateral, he testified that he gave the envelope to his attorney, John C. Johanneson, and that Johanneson never indicated to him that any of the collateral was missing. Johanneson's deposition testimony merely corroborated the deposition testimony of Garmaker and the testimony of Shuster. Johanneson stated in his deposition that he received the stock certificates in the envelope because he remembered checking through the envelope at the time he received it. It was also his recollection that the Chateau Shelard note was with the stock certificates. Finally, the court indicated that the only contradictory evidence offered by the trustee was the fact that Mr. Shuster did not open the envelope and could therefore not verify its contents. The court "did not find that sufficiently persuasive to rebut the defendant's evidence."
 
 
 30
 We have reviewed the testimony of Shuster and the deposition testimony of Garmaker and Johanneson. We are convinced that Johanneson's testimony is merely corroborative and that there is sufficient other evidence which supports the trial court's findings. See Grinder v. Southern Farm Bureau Casualty Insurance Co., supra, 590 F.2d at 743. Since the trustee introduced little evidence which directly contradicted Garmaker's testimony that the collateral was delivered on January 24,[5] and because the trial court's determination is supported by independent evidence, we hold that the consideration of Johanneson's deposition testimony is harmless error. See Holt v. Sarver, supra, 442 F.2d at 307. Moreover, we have reviewed the record and are convinced that the evidence, when viewed in its entirety, supports the trial court's finding. Since the findings of fact of the trial court will be set aside on appeal only if they are "clearly erroneous" or unsupported by substantial evidence, we affirm the district court's finding that the delivery of the collateral was on January 24, 1974.[6] Automated Controls, Inc. v. MIC Enterprises, 599 F.2d 288, 289 (8th Cir. 1979). Rule 52(a), Federal Rules of Civil Procedure.
 
 
 31
 The Transfer of the Collateral.
 
 
 32
 The Trustee next contends that the trial court erred, as a matter of law, in holding that the collateral was "transferred," for purposes of Sections 60(a) (1) and 67(d)(2) and (3), upon the secured party's taking possession of the collateral, rather than upon the formal assignment of the collateral to the secured party. Again, we disagree. And although the trustee sets forth a lengthy argument in support of this contention, we see no need to respond to each point raised in the briefs. Instead, we turn to our view of the controlling legal principles.
 
 
 33
 Section 60(a)(2) sets forth the time at which a transfer is deemed to have been made for purposes of voiding preferential payments under Section 60(a)(2) and for determining whether the transferee had reasonable cause to believe that the debtor was insolvent at the time of transfer under Section 60(b). 11 U.S.C. § 96(a)(2) reads, in pertinent part, as follows:
 
 
 34
 For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee.
 
 
 35
 Section 67(d)(5) sets forth the time at which a transfer is deemed to have been made for purposes of voiding fraudulent transfers under Section 67(d) as follows:
 
 
 36
 For the purposes of this subdivision, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona fide purchaser from the debtor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, but, if such transfer is not so perfected prior to the filing of the petition initiating a proceeding under this title, it shall be deemed to have been made immediately before the filing of such petition.
 
 
 37
 11 U.S.C. § 107(d)(5). Although these federal provisions define the time of transfer as that time in which it became so far perfected that no bona fide purchaser or subsequent lien holder could have rights superior to those of the transferee, it is clear that "the procedure which must be followed in perfecting a security interest in the property of a bankrupt is determined in accordance with state law." In Re Vodco Volume Development Co., 567 F.2d 967, 970 (10th Cir. 1977), appeal dism'd, 439 U.S. 806, 99 S.Ct. 62, 58 L.Ed.2d 98 (1978). We therefore turn to the law of Minnesota to determine the appropriate procedure for perfecting the security interest in the pledged collateral.
 
 
 38
 Under Section 9-105(g) of the Minnesota Uniform Commercial Code, Minn.Stat. § 336.9-105(g), negotiable instruments such as the Chateau Shelard note and securities such as the ICBS, Creamery and McAllister stocks are included in the category of "instruments":
 
 
 39
 "Instrument" means a negotiable instrument (defined in section 336.3-104), or a security (defined in section 336.8-102) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment;
 
 
 40
 Under the terms of Minn.Stat. § 336.9-304, a security interest in instruments is perfected through the secured party's taking possession:
 
 
 41
 (1) A security interest in chattel paper or negotiable documents may be perfected by filing. A security interest in instruments (other than instruments which constitute part of chattel paper) can be perfected only by the secured party's taking possession, except as provided in subsections (4) and (5).
 
 
 42
 Subsections (4) and (5), dealing with temporary perfection, are not applicable. We therefore end our inquiry with an examination of the statute dealing specifically with the perfection of security interests through possession of the collateral.
 
 
 43
 Minn.Stat. § 336.9-305[7] provides, in part, as follows:
 
 
 44
 A security interest in letters of credit and advices of credit (subsection (2) (a) of section 336.5-116), goods, instruments, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral.
 
 
 45
 In our view, Section 9-305 of the Uniform Commercial Code clearly provides that the perfection of the security interest in an instrument is complete upon the secured party's possession of that instrument, alone. The trustee's argument that an assignment of legal title to the collateral is necessary for perfection has been specifically rejected in other courts:
 
 
 46
 It seems that bare possession is enough to satisfy Sec. 28-9-305, Idaho Code. Legal title in the bailee-trustee is not required. In addition, Sec. 28-9-202, Idaho Code, states:
 
 
 47
 "Each provision of this chapter with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor."[8]
 
 
 48
 Barney v. Rigby Loan & Investment Co., 344 F.Supp. 694, 696 (D.Idaho 1972). Moreover, this view has been accepted by the Sixth Circuit Court of Appeals, Wilkie v. Brooks, 515 F.2d 741, 745 (6th Cir.), cert. denied, 423 U.S. 996, 96 S.Ct. 423, 46 L.Ed.2d 370 (1975) ("Under that section of the Florida Uniform Commercial Code (9-305), a security interest in stock is perfected by possession alone."), and by the Third Circuit Court of Appeals. See Appeal of Copeland, 531 F.2d 1195, 1204 (3rd Cir. 1976) ("The fact that debtor remained owner of record and was empowered to vote the shares and receive current income does not compel a different finding. The location of title to collateral is immaterial with respect to the rights and obligations of the parties to a security transaction § 9-202.").
 
 
 49
 In addition, the provisions which permit the perfection of a security interest by taking possession were specifically contemplated by the drafters of the Bankruptcy Act. Section 60(a)(6) reads, in pertinent part, as follows:
 
 
 50
 The recognition of equitable liens where available means of perfecting legal liens have not been employed is declared to be contrary to the policy of this section. If a transfer is for security and if (A) applicable law requires a signed and delivered writing, or a delivery of possession, or a filing or recording, or other like overt action as a condition to its full validity against third persons other than a buyer in the ordinary course of trade * * * and (B) such overt action has not been taken, and (C) such transfer results in the acquisition of only an equitable lien, then such transfer is not PERFECTED WITHIN THE MEANING OF PARAGRAPH (2) of this subdivision. * * *
 
 
 51
 11 U.S.C. § 96(a)(6) (emphasis supplied).
 
 
 52
 Finally, we believe that the Minnesota Supreme Court has recently interpreted the terms of Minn.Stat. 336.9-305 in a similar manner. In Shaffer v. Brooklyn Park Garden Apartments, 311 Minn. 452, 250 N.W.2d 172, 177 (1977), the state supreme court held that a bank which held nontransferable letters of credit as collateral had a perfected security interest in the collateral by virtue of its bare possession of the letters pursuant to the provisions of Section 9-305. We therefore have little difficulty in agreeing with the district court that if the legislature of Minnesota "had intended that the secured party take the additional step of securing an assignment of the debtor's interest, it would have so provided."
 
 
 53
 The Value of the ICBS Stock.
 
 
 54
 The remaining issue which we shall discuss in this appeal is the valuation of the ICBS stock. The value of the stock is an essential element to be considered in assessing the trustee's claim under Section 70 of the Act, wherein it is alleged that the bankrupt's contractual cause of action against Shuster for the commercially unreasonable sale of the collateral vested in the trustee pursuant to Section 70(a)(6). The trial court found that the trustee had introduced no evidence showing prospective buyers who were willing to purchase the ICBS stock at a higher price than that paid by Rajamannan. The trustee also failed to introduce any evidence relating to the value of the stock on the date of its sale to Rajamannan. The court thus concluded that the trustee had not met his burden of proving damages.
 
 
 55
 In addition, the value of the stock is essential to the trial court's conclusion "that Shuster extended the loan and received the collateral in good faith, and that the transfer was for a present fair equivalent." This determination afforded Shuster the protection of Section 67(d)(6) and prevented the transfer from being voided as a fraudulent conveyance.
 
 
 56
 We have reviewed the evidence relating to the value of the ICBS stock. Although the district court's valuation is by no means uncontroverted, we find that it is supported by substantial evidence in the record, including the financial statement of the corporation and the deposition and live testimony of Shuster, Rajamannan and Garmaker. From the inception of the business and throughout the time period relevant to our inquiry, ICBS was an unsuccessful business. The company was in serious financial trouble and its stock had virtually no book value at the time Rajamannan purchased the shares from Shuster. Even if the stock was worth more than the $12,400 determined by the trial court, the trustee failed to prove that the stock was worth any more than the $67,368 that Rajamannan paid for it. Therefore, the cause of action under Section 70 was properly dismissed. In addition, we hold that the evidence supports the trial court's valuation of the stock as of the date of the transfer of the collateral to Shuster.
 
 III.
 
 57
 The remaining issues on appeal have been carefully considered by the court, and we find them to be without merit. Accordingly, the decision of the district court is affirmed.
 
 
 
 [1]
 The Honorable Edward J. Devitt, Chief Judge of the United States District Court for the District of Minnesota
 
 
 [2]
 This case was commenced prior to the enactment of the Bankruptcy Act of 1978. The terms of the prior Bankruptcy Act (hereinafter the Bankruptcy Act, or the Act) are therefore applicable to our consideration of this appeal. Bankruptcy Act, Title IV, Nov. 6, 1978, Pub.L.No. 95-598, § 403, 92 Stat. 2683
 
 
 [3]
 On December 13, 1980, Judge Devitt entered his memorandum and order denying both the defendants' motion for summary judgment and the plaintiff's motion for an order striking the affidavit of John S. Johanneson or in the alternative for attorneys' fees
 
 
 [4]
 Section 67(d)(2), 11 U.S.C. § 107(d)(2), reads as follows:
 Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors.
 Section 67(d)(3), 11 U.S.C. § 107(d)(3), reads as follows:
 Every transfer made and every obligation incurred by a debtor who is or will thereby be rendered insolvent, within four months prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent, as to then existing and future creditors; (a) if made or incurred in contemplation of the filing of a petition initiating a proceeding under this title by or against the debtor or in contemplation of liquidation of all or the greater portion of the debtor's property, with intent to use the consideration obtained for such transfer or obligation to enable any creditor of such debtor to obtain a greater percentage of his debt than some other creditor of the same class, and (b) if the transferee or obligee of such transfer or obligation, at the time of such transfer or obligation, knew or believed that the debtor intended to make such use of such consideration. The remedies of the trustee for the avoidance of such transfer or obligation and of any ensuing preference shall be cumulative: Provided, however, That the trustee shall be entitled to only one satisfaction with respect thereto.
 
 
 [5]
 The trustee argues that he was deprived of the opportunity to present rebuttal evidence because the parties received no notification that the court would consider the deposition testimony of Johanneson. In light of the fact that Johanneson's testimony merely corroborated those portions of Shuster's and Garmaker's statements which supported the trial court's findings, we find this argument unpersuasive
 
 
 [6]
 As this court pointed out in Automated Controls, Inc. v. MIC Enterprises, 599 F.2d 288, 289 (8th Cir. 1979), the "clearly erroneous" and "substantial evidence" standard is particularly applicable "in cases which are based upon oral testimony." We place great emphasis on the fact that Judge Devitt had the opportunity to observe defendant Shuster's demeanor in testifying, and commented in a separate section of the opinion on his impression:
 The court finds that Shuster extended the loan and received the collateral in good faith and without knowledge or belief of Garmaker's intended use of the proceeds and that Shuster did not have reasonable cause to believe that Garmaker was insolvent at the time that loan was made. In doing so the court placed great weight on the testimony and demeanor of Shuster at trial. Shuster appeared to be an honest sophisticated businessman with considerable financial holdings. He was undoubtedly a friend of Garmaker, but had nothing to gain, financially, from the Garmaker transaction. The court finds it difficult to blieve (sic) that a man with Shuster's business acumen, having nothing to gain financially, would involve himself in the web of conspiracy to commit fraud which counsel for the trustee asks the court to find.
 
 
 [7]
 Although Articles 8 and 9 have been amended since the filing of this suit, the new terms do not apply to this transaction. See Minn.Stat. § 336.11-103
 
 
 [8]
 Minn.Stat. § 336.9-202 reads, in part, as follows:
 Each provision of this article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor.