**F I L E D**

**UNITED STATES COURT OF APPEALS**

**MAR 22 2005**

**TENTH CIRCUIT**

---

In re: DANNY S. MARTINEZ and
KATHERINE F. MARTINEZ,

 Debtors,

-----------------------------------

DANNY S. MARTINEZ;
KATHERINE F. MARTINEZ,

 Appellants,

v.

LOS ALAMOS NATIONAL BANK,

 Appellee.

No. 04-2040
(D. N.M.)
(D.Ct. No. CIV-02-1315-LH/WWD)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, and **PORFILIO** and **BRORBY**, Senior
Circuit Judges.

---

 After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

 [*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

Appellants Danny S. Martinez and Katherine F. Martinez, husband and wife, represented by counsel, appeal the district court's decision affirming the bankruptcy court's summary judgment decision and judgment in an adversary bankruptcy proceeding. The Martinezes contend the bankruptcy court erred in granting summary judgment to Appellee Los Alamos National Bank (the Bank) in denying discharge of their debt, under 11 U.S.C. § 727(a)(6)(C), for failure to comply with the bankruptcy court's order compelling discovery. The Martinezes also appeal certain other district court orders concerning items they designated on appeal to the district court and which it struck from the record. We exercise jurisdiction pursuant to 28 U.S.C. § 158(d) and § 1291 and affirm the district court's decision and orders.

I. BACKGROUND

Certain facts are not in dispute. On May 23, 2001, the Martinezes filed for Chapter 11 bankruptcy protection, after being sued by the Bank over certain loans transacted by Ms. Martinez. Ms. Martinez is a former mortgage loan officer at the Bank. At the time the Martinezes filed their bankruptcy case, the Bank no

longer employed Ms. Martinez and she was the subject of a federal investigation into suspected embezzlement from the Bank.

Pursuant to Federal Rule of Bankruptcy Procedure 2004, the Bank successfully filed a motion, as a party in interest, for a court order to examine the Martinezes by deposition. *See* Fed. R. Bankr. P. 2004(a). In September 2001, when the Bank attempted to take the Martinezes' depositions, they invoked their Fifth Amendment privilege against self-incrimination and refused to answer many of the questions posed. Thereafter, on October 10, 2001, the Bank filed a motion with the bankruptcy court for an order compelling the Martinezes to comply with the court's previous discovery order.

On February 13, 2002, Ms. Martinez received a federal indictment for five counts of bank fraud, six counts of money laundering promotion, six counts of money laundering concealment, and two counts of money laundering under 18 U.S.C. § 1957. On March 22, 2002, the bankruptcy court entered an order and opinion granting in part and denying in part the Bank's motion to compel answers to certain deposition questions and production of documents, hereinafter referred to as the Order to Compel. After analyzing each question, the bankruptcy court found the Martinezes asserted a reasonable fear of future prosecution and validly

invoked their Fifth Amendment privileges on most of the Bank's questions. However, it found their Fifth Amendment privilege did not extend to questions on their possible claims against the Bank and its Chief Executive Officer, Mr. Enloe, for defamation and $60,000 allegedly owed Ms. Martinez by Mr. Enloe. The bankruptcy court then ordered the Martinezes to answer specific questions asked of them in their prior depositions related to those claims.[1] The Martinezes did not

---

[1] The bankruptcy court ordered Ms. Martinez to answer the following material questions, which she later refused to answer, again invoking her Fifth Amendment privilege:

> 1) "You show ... there are claims ... you and your husband have against [the Bank] and [Mr.] Enloe. Can you tell me about those?"

> 2) "Can you ... tell me what you think the value of those claims are?"

> 3) "No. 30, all documents which support your claim of a debt of [Mr.] Enloe to [you] in the amount of $60,000. That folder was empty. Do you have any documents that support that claim?"

> 4) "No. 31, all documents which support your claims against [the Bank] and [Mr.] Enloe under Schedule B20. Do you have any documents which support that claim?"

> 5) "Other than these documents produced in Exhibit 53, are there any other documents that you claim support your claim against [the Bank] and Mr. Enloe?"

The bankruptcy court ordered Mr. Martinez to answer the following material questions, which he later refused to answer, again invoking his Fifth Amendment privilege:

> 1) "On [Schedule] B17, you show an asset of this bankruptcy case, a debt of [Mr.] Enloe to Katherine Martinez for $60,000. Can you tell me what the

appeal the Order to Compel or take any other action to reverse it or stay its implementation.

On June 20, 2002, the Bank resumed the Martinezes' depositions, at which time they both acknowledged they had read the bankruptcy court's Order to Compel and supporting opinion, and understood the Order directed them to answer certain questions which they previously refused to answer. However, Ms. Martinez reasserted her Fifth Amendment privilege and refused to answer five of the six questions the bankruptcy court ordered her to answer. Similarly, Mr. Martinez refused to answer at least four of the questions the court ordered him to answer, also invoking his Fifth Amendment privilege.

---

basis of that is?"

2) "[W]ith respect to Schedule B No. 20 where you tell the bankruptcy court that you have another asset, will you be answering any questions about the claims listed ... against [the Bank] and [Mr.] Enloe?"

3) "My Request No. 30, I asked for all documents which support your claim of a debt of [Mr.] Enloe to Katherine Martinez in the amount of $60,000. Do you have any documents in support of that claim?"

4) "In Request No. 31, I ask for all documents which support your claims against [the Bank] and [Mr.] Enloe. Do you have any documents which support that claim?"

On June 27, 2002, the Bank filed a complaint in a bankruptcy adversary proceeding to deny discharge of the Martinezes' debt, under 11 U.S.C. § 727(a)(6)(A) and (C), based on their "wilful and intentional" failure to respond to material questions in compliance with the court's Order to Compel. On July 29, 2002, the Martinezes answered the complaint in the adversary proceeding, reinvoking their Fifth Amendment privilege.

On August 2, 2002, the Bank filed a motion for summary judgment and memorandum in support thereof, requesting the bankruptcy court deny the Martinezes' discharge as a matter of law, pursuant to 11 U.S.C. § 727(a)(6)(C), for wilful and intentional refusal to respond to material questions approved by the court.[2] The motion for summary judgment was supported by various pleadings and exhibits. The Martinezes responded to the motion for summary judgment by reinvoking their Fifth Amendment privilege and denying they wilfully and intentionally refused to answer certain material questions in violation of § 727(a)(6)(C).

---

[2] The Bank also requested summary judgment, pursuant to another section, 11 U.S.C. § 727(a)(6)(A), for wilful and intentional refusal to obey a lawful order of the court, by refusing to obey the court's order for a handwriting sample. This issue was not part of the Martinezes' appeal to the district court, and therefore, is not before this court.

On July 2, 2002, during the period in which the Bank filed its motion for summary judgment in the adversary proceeding, it also filed a second motion to compel in the main bankruptcy proceeding, asking for another order to compel the Martinezes to answer the deposition questions concerning their claims against the Bank and Mr. Enloe and to produce certain documents, and asking for an order requiring a paralegal to testify and supply documents the Martinezes gave her related to financial and business records. On August 19, 2002, the bankruptcy court held a hearing on the Bank's second motion to compel in the main bankruptcy proceeding. At the hearing, the parties almost exclusively focused on the paralegal's refusal to answer or produce documents that the Bank claimed the Martinezes provided to her and which she claimed as work product. During the hearing, the bankruptcy court noted Ms. Martinez's criminal trial was to be held in three weeks, and that if it did decide to require the Martinezes to answer or produce anything in conjunction with the Bank's second motion to compel, it would do so at the conclusion of the criminal trial.[3]

Thereafter, on August 28, 2002, the bankruptcy court held a hearing on the Bank's motion for summary judgment in the adversary proceeding, but neither

---

[3] The district court struck this transcript from the record on appeal, which the Martinezes have appealed and reinserted in the record before us. Our reliance on the transcript is explained hereinafter.

party requested a stay of the summary judgment pending developments in the criminal case. A day later, on August 29, 2002, the Martinezes' attorney sent the bankruptcy court a letter, informing it Ms. Martinez had signed a guilty plea in her criminal case, the plea was contingent on acceptance by the district court after completion of a presentencing report, and he believed it would make "sense for the Court to withhold its ruling on [the Bank's second] Motion to Compel until the conclusion of the sentencing hearing. In the likely event [the judge] accepts the plea agreement, [the Bank's second] Motion to Compel will be moot."[4] However, the Martinezes again did not informally or formally file a motion or request to stay the summary judgment proceeding pending any other developments in the criminal case.

On October 8, 2002, the bankruptcy court granted the Bank's summary judgment motion, concluding the Martinezes violated 11 U.S.C. § 727(a)(6)(C), by wilfully failing and refusing to answer questions the bankruptcy court previously approved and ordered them to answer after determining a Fifth Amendment privilege did not extend to those questions. It further determined the Martinezes' reassertion of their Fifth Amendment privilege following its Order to

---

[4] This letter is one of the items which the district court struck from the record on appeal, which the Martinezes appeal and have reinserted in the record on appeal before us. Our reliance on this letter is explained hereinafter.

Compel was invalid. Following its grant of summary judgment to the Bank, the bankruptcy court entered a judgment denying the Martinezes' discharge pursuant to § 727(a)(6)(C).[5]

The Martinezes elected to appeal the result of the adversary proceeding to the district court, raising several issues concerning the propriety of the bankruptcy court's grant of summary judgment to the Bank. However, in their notice of appeal, the Martinezes did not identify the bankruptcy court's March 22, 2002 Order to Compel, which resolved their Fifth Amendment privilege claims, as an order which they intended to appeal.[6]

In their designated record on appeal to the district court, the Martinezes submitted various pleadings, which the Bank moved to strike, contending they were late-filed and contained pleadings from the main bankruptcy case, another adversary proceeding, and a criminal case which were not before the bankruptcy court in making its summary judgment decision. In an order striking items designated by the Martinezes and objected to by the Bank, the district court found

---

[5] It is unclear from the record what, if any, further action occurred on the Bank's second motion to compel in the main bankruptcy proceeding. On January 17, 2003, the district court accepted Ms. Martinez's guilty plea and sentenced her.

[6] The Martinezes' Notice of Appeal specifically appealed only the October 8, 2002 judgment and order granting the Bank's motion for summary judgment.

these items, including the August 29, 2002 letter from their attorney advising Ms.

Martinez entered into a guilty plea, were not presented to the bankruptcy judge in

response to the motion for summary judgment in the adversary proceeding.

Instead, the district court pointed out that the grant of summary judgment was

based on the Martinezes' failure to comply with the Order to Compel requiring

their testimony, which they did not appeal or otherwise challenge.

Thereafter, the Martinezes filed a motion to clarify the order, noting that

the bankruptcy clerk, in response to the court's order, improperly removed two

transcripts—one from a January 10, 2002 hearing,[7] and the other from the August

19, 2002 hearing on the Bank's second motion to compel—neither of which the

Bank previously objected to, nor were referred to in the court's order to strike.

They requested an order restoring the transcripts of those hearings into the record.

The district court issued an order summarily holding the bankruptcy clerk

appropriately removed the two hearing transcripts from the record and denying

the Martinezes' request to restore them to the record on appeal.

---

[7] Because the Martinezes fail to discuss the January 10, 2002 hearing in their brief on appeal, and instead argue exclusively in support of consideration of the August 19, 2002 hearing, we consider waived any issue relating to striking or exclusion of the January 10, 2002 transcript from the record. *See Gen. Elec. Capital Corp. v. Manager of Revenue* (*In Re W. Pac. Airlines, Inc.*), 273 F.3d 1288, 1293 (10th Cir. 2001).

Following the district court's orders on the appeal record, the federal magistrate judge issued his proposed findings and recommendation, addressing the summary judgment issues raised by the Martinezes and recommending the district court affirm the bankruptcy court's decision. After considering the Martinezes' objections thereto, the district court adopted the magistrate judge's proposed findings and recommendation and dismissed the Martinezes' appeal with prejudice.

## II. DISCUSSION

The Martinezes now appeal the district court's decision affirming summary judgment, and its two orders concerning the record they designated on appeal. The crux of their issues concerns the bankruptcy court's summary judgment determination, in which they claim: 1) disputed issues of fact exist precluding summary judgment on whether their refusal to answer questions under the Fifth Amendment was wilful or intentional; 2) the bankruptcy court either erred as a matter of law or abused its discretion in granting summary judgment in violation of their constitutional rights against self-incrimination under the Fifth Amendment; and 3) the bankruptcy court erred in basing summary judgment on their failure to challenge or appeal the Order to Compel, which they claim was an unappealable discovery order. With respect to the district court, they contend it

erred in affirming the grant of summary judgment, and limiting the record when it struck certain items from the record, including their attorney's August 29, 2002 letter and the August 19, 2002 hearing transcript, which they claim establish the bankruptcy court improperly granted summary judgment without first ruling on the Bank's second motion to compel discovery.

We address each issue separately, beginning with our standard of review. We review the bankruptcy court's grant of summary judgment *de novo*, affording no deference to the district court's decision. *Bailey v. Big Sky Motors, Ltd.* (*In re Ogden*), 314 F.3d 1190, 1195 (10th Cir. 2002). Our summary judgment standard under Federal Rule of Civil Procedure 56 is applicable to bankruptcy adversary proceedings. *See id.* (relying on Fed. R. Bank. P. 7056). "[S]ummary judgment is warranted if 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56). "Under this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.*

With the standard of review in mind, we proceed with the law applicable to nondischarge of debt in a bankruptcy adversary proceeding, including issues relating to noncompliance with discovery orders and invocation of the Fifth

Amendment privilege. To begin, "[t]he purpose of the Bankruptcy Code is to provide the honest, but unfortunate debtor a fresh start." *Dalton v. IRS* (*In re Dalton*), 77 F.3d 1297, 1300 (10th Cir. 1996). Congress has described the discharge provision under 11 U.S.C. § 727 as the "heart of the fresh start provisions of the bankruptcy law." *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) (relying on H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977) (quotation marks omitted)). However, under 11 U.S.C. § 727(a)(6), a debtor's failure to comply with a bankruptcy court's discovery order can be an independent ground for denying discharge of a debt. *See* 6 *Collier on Bankruptcy* ¶ 727.09[1] & [3], at 727-50 to -52 (Alan N. Restnick & Henry J. Sommer, eds., 15th ed. rev. 2003). Specifically, the bankruptcy court may deny a debtor a discharge if he or she has "refused" to obey a lawful order of the court. *See* 11 U.S.C. § 727(a)(6).[8] The

---

[8] Section 727(a)(6) states:

(a) The court shall grant the debtor a discharge, unless–
        ....
(6) the debtor has refused, in the case–
(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;
(B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or
(C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify.

word "refuse," in the context of § 727(a)(6), "requires the Court to go further than to simply find that a debtor failed to comply with a discovery request. Rather, it must find that the disobedience was willful or intentional." *D'Agnese v. Cotsibas* (*In re Cotsibas*), 262 B.R. 182, 186 (Bankr. D. N.H. 2001). *See also Law Offices of Dominic J. Salfi v. Prevatt* (*In re Prevatt*), 261 B.R. 54, 60-61 (Bankr. M.D. Fla. 2000) (concluding refusal under § 727(a)(6) "must be willful and not merely inadvertent"); *Solomon v. Barman* (*In re Barman*), 237 B.R. 342, 349 (Bankr. E.D. Mich. 1999) (holding "refusal" requires intentional act of disregarding order).

Thus, under § 727(a)(6)(C), the court may deny a debtor discharge of a debt if he or she wilfully or intentionally refuses to testify after improperly asserting the Fifth Amendment.[9] *See In Re Connelly*, 59 B.R. 421, 446 (Bankr. N.D. Ill.

_____

11 U.S.C. § 727(a)(6).

[9] In support of their contention the bankruptcy court improperly denied discharge, the Martinezes mistakenly rely on cases discussing discharge under 11 U.S.C. § 727(a)(6)(B)–a subsection different from § 727(a)(6)(C), which the Bank asserted in support of its complaint and motion for summary judgment, and which the bankruptcy court relied on in denying the Martinezes' discharge. *See Martin-Trigona v. Belford* (*In re Martin-Trigona*), 732 F.2d 170, 171, 173 (2d Cir. 1984) (explaining § 727(a)(6)(B) allows denial of debtor's discharge when he or she fails to testify after receiving a grant of immunity from the government); *Turner v. Wlodarski* (*In re Minton Group, Inc.*), 43 B.R. 705, 709 (Bankr. S.D. N.Y. 1984) (relying on § 727(a)(6)(B) to explain if the United States Attorney does not request immunity from the district court, then a "debtor may refuse to testify and still retain his right to a discharge"); *Channel v. Channel* (*In re Channel*), 29 B.R. 316, 318 (Bankr. W.D. Ky. 1983) (determining denial of discharge is

1986) (concluding a bankruptcy court may not only deny a discharge under § 727(a)(6)(C), but may dismiss a debtor's case for failure to comply). While we are cognizant the Bankruptcy Code, including § 727, must be construed liberally in favor of the debtor because denial of a discharge is an extreme penalty, *see Gullickson v. Brown* (*In re Brown*), 108 F.3d 1290, 1292-93 (10th Cir. 1997); *Rosen*, 996 F.2d at 1531, we also acknowledge § 727(a)(6) is intended to give the bankruptcy court a means to ensure the debtor is straightforward in dealings with creditors and complies with its orders. Denial of discharge under § 727(a)(6) for refusing to obey a court order follows the general proposition that a court order "must be obeyed by the parties until it is reversed by orderly and proper proceedings." *Maness v. Meyers*, 419 U.S. 449, 459 (1975) (quotation marks and citation omitted).

---

the appropriate remedy under § 727(a)(6)(B) when the debtor invokes the privilege against self-incrimination after immunity has been granted by the United States Attorney).

Unlike subsection (B) of § 727(a)(6), subsection (C) permits denial of "a discharge to a debtor who refuses to respond to a material question approved by the court or refuses to testify on any ground other than the *properly invoked* privilege against self-incrimination. This section applies when the debtor refuses to answer 'a material question approved by the court.'" 6 *Collier on Bankruptcy* ¶ 727.09[3], at 727-52 (emphasis added). In this case, the bankruptcy court relied on subsection (C) to determine the Martinezes did not properly invoke their Fifth Amendment privilege under § 727(a)(6)(C) with respect to their claims against the Bank and Mr. Enloe, and ordered them to answer material questions concerning those claims. For this reason, we find the cases relied on by the Martinezes unpersuasive.

With this said, this court also recognizes that "[w]hen the Fifth Amendment privilege is invoked ..., the person claiming its protection ordinarily 'receives a judicial ruling at that time on the validity of his claim, and ... an opportunity to reconsider it before being [penalized] for refusal to answer.'" *Chicago Title Ins. Co. v. Mart* (*In re Mart*), 90 B.R. 547, 549 (Bankr. S.D. Fla. 1988) (quoting *Rogers v. Webster*, 776 F.2d 607, 612 (6th Cir. 1985)*, and quoting in part *Garner v. United States*, 424 U.S. 648, 663 (1976)) (alteration in original). "Not affording one who asserts the privilege an opportunity to answer, once his claim of privilege has been rejected, is to penalize him merely for asserting the privilege." *In re Mart*, 90 B.R. at 549 (quoting *Rogers*, 776 F.2d at 612). But once the noncomplying party has an opportunity to reconsider whether to testify in contradiction of a judicial ruling on the Fifth Amendment privilege and then continues to refuse, he or she may be denied certain benefits and exposed to negative consequences as a result of improperly reinvoking the privilege. *See In re Moses*, 792 F. Supp. 529, 536 (Bankr. E.D. Mich. 1992) (relying in part on *Mid-America's Process Serv. v. Ellison*, 767 F.2d 684, 686 (10th Cir. 1985)).

In this case, the Martinezes plainly received a judicial ruling on the validity of their Fifth Amendment privilege claims when the bankruptcy court issued the Order to Compel, granting them Fifth Amendment protection in part, and denying

such protection with regard to their claims against the Bank and Mr. Enloe. The Martinezes then had an opportunity to reconsider whether to reassert their Fifth Amendment privileges, and elected to reinvoke them: 1) at their second series of depositions, 2) in response to the Bank's complaint, and 3) in response to the Bank's motion for summary judgment. At their depositions, the Martinezes acknowledged their understanding that the bankruptcy court's order and memorandum opinion compelled them to answer a series of questions concerning their claims against the Bank and Mr. Enloe. They nevertheless knowingly refused to comply, thereby electing to suffer any negative consequences as a result of reinvoking their privilege. While they contend a disputed issue of material fact exists as to whether their refusal was wilful or intentional, the record and law applicable thereto clearly show otherwise.[10] Accordingly, the bankruptcy and district courts did not err in determining no issue of material fact existed

---

[10] We reject the Martinezes' contention their refusal to answer the bankruptcy court's questions was not wilful or intentional because they relied on advice of counsel. The primary case on which they rely is clearly distinguishable because the bankruptcy court refused to deny discharge given the debtor's false oath was the product of an inadvertent oversight and mistake by the debtor or his attorney. *See Casa Invests. Co. v. Brenes* (*In re Brenes*), 261 B.R. 322, 337 (Bankr. D. Conn. 2001). The other cases the Martinezes cite in support of this proposition concern reliance on a United States Attorney's grant of immunity under Subsection (B) of § 727(a)(6) as the advice of counsel relied on, or are otherwise similarly inapplicable, warranting no further discussion. *See In re Minton Group, Inc.*, 43 B.R. at 708-09. *See also McCarthy v. Arndstein*, 266 U.S. 34, 41-42 (1924); *McCormick v. Banc One Leasing Corp.* (*In re McCormick*), 49 F.3d 1524, 1526-27 (11th Cir. 1995); *Olson v. Potter* (*In re Potter*), 88 B.R. 843, 849-50 (Bankr. N.D. Ill. 1988).

-17-

precluding summary judgment disposition.

Not dissuaded in their efforts to contest the grant of summary judgment, the Martinezes attack the underlying Order to Compel and opinion in support thereof, in which they claim the bankruptcy court improperly concluded the Fifth Amendment privilege did not extend to their claims against the Bank and Mr. Enloe. They also claim the bankruptcy court improperly granted summary judgment based on the fact they failed to seek reconsideration or otherwise appeal its Order to Compel. In support of this contention, the Martinezes argue the bankruptcy court's Order to Compel was a nonappealable, interlocutory discovery order, and rely on cases discussing this court's limited jurisdiction, under 28 U.S.C. § 158(d), to review only final orders of the district court,[11] rather than rely on 28 U.S.C. § 158(a), which describes the district court's jurisdiction to review a bankruptcy court's interlocutory orders. They further infer they did not appeal the March 22, 2002 Order to Compel based on the bankruptcy court's comment, six months later, at the August 19, 2002 hearing on the Bank's second motion to compel, to withhold its ruling until after the trial.

---

[11] *See Farmers Home Admin. v. Buckner* (*In re Buckner*), 66 F.3d 263, 265 (10th Cir. 1995) (applying 28 U.S.C. § 158(d) to determine the Tenth Circuit's jurisdiction over district court orders); *Magic Circle Energy v. Lindsey* (*In Re Magic Circle Energy Corp.*), 889 F.2d 950, 953 (10th Cir. 1989) (same).

We begin by noting, as did the district court, that the bankruptcy court's summary judgment decision was not based on the fact the Martinezes did not appeal or request reconsideration of the Order to Compel, but on the fact they failed to obey its order compelling answers to the specified questions. Even though the summary judgment determination is not based on their failure to challenge the order, we would be remiss not to point out the Martinezes incorrectly contend no recourse existed to contest the Order to Compel, which not only resolved the Bank's discovery request, but resolved their Fifth Amendment privilege claims. First, the Martinezes had the opportunity to request reconsideration by the bankruptcy court, which they failed to do. *See Unioil v. Elledge (In re Unioil, Inc.)*, 962 F.2d 988, 993 (10th Cir. 1992). Next, the district court's jurisdiction to review interlocutory bankruptcy orders is contained in 28 U.S.C. § 158(a)(3), giving it discretion to review interlocutory or nonfinal decisions of the bankruptcy court. *See Gibson v. Kassover (In re Kassover)*, 343 F.3d 91, 94 (2d Cir. 2003) (stating "[u]nder Section 158 (a)(3), a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court"); *Adelman v. Fourth Nat'l Bank & Trust Co. (In re Durability, Inc.)*, 893 F.2d 264, 266 (10th Cir. 1990) (*per curiam*) (explaining § 158(a) expressly permits the district court to entertain an appeal from a nonfinal order). Under this provision, the Martinezes could have brought an interlocutory appeal before the

district court.

As to the propriety of the bankruptcy court's decision that the Fifth Amendment privilege did not extend to the Martinezes' claims against the Bank and Mr. Enloe, the magistrate judge for the district court determined this issue was not before the bankruptcy court in considering the Bank's summary judgment motion in the adversary proceeding, and therefore it refused to address it on appeal. He explained:

> The question of whether the Martinezes had a valid Fifth Amendment privilege was decided in the Bankruptcy proceeding in response to [the Bank's first] motion to compel. The issue before [this] Court on [the Bank's] motion for summary judgment was whether the Martinezes willfully and intentionally refused to respond to material questions approved by the court.

Clearly, the district court did not address the propriety of the bankruptcy court's determination the Fifth Amendment privilege did not extend to the Martinezes' claims against the Bank and Mr. Enloe. Generally, we will not address issues not addressed by the district court. *See Walker v. Mather* (*In re Walker*), 959 F.2d 894, 896 (10th Cir. 1992). However, even if we addressed the issue *de novo* as one underlying the summary judgment decision, and considered the Martinezes' appellate brief and the entire record designated on appeal, the Martinezes fail to satisfactorily explain how their answers to questions on their claims against the Bank and Mr. Enloe, especially for the money allegedly owed

-20-

them, would lead to self-incrimination in Ms. Martinez's criminal case. Instead, they simply continue to assert a general Fifth Amendment claim that answering the certified questions would impinge on their rights against self-incrimination. This is insufficient to invoke the Fifth Amendment. *See Hoffman v. United States*, 341 U.S. 479, 486 (1951) (explaining one "is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination").

Finally, we address the Martinezes' contention the district court improperly struck from the record the August 19, 2002 hearing transcript on the Bank's second motion to compel and their attorney's August 29, 2002 letter. Federal Rule of Civil Procedure 61, incorporated in Federal Rule of Bankruptcy Procedure 9005, applies in determining whether an error in a bankruptcy proceeding is harmless. *See Hart Envtl. Mgmt. Corp. v. Sanshoe Worldwide Corp.* (*In re Sanshoe Worldwide Corp.*), 993 F.2d 300, 305 (2d Cir. 1993) (concluding failure to make necessary specific finding was harmless error); *Club Assocs. v. Consol. Capital Realty Investors* (*In re Club Assocs.*), 951 F.2d 1223, 1234 n.13 (11th Cir. 1992) (determining court's failure to strike affidavit did not prejudice party); *Lovett v. Shuster*, 633 F.2d 98, 103 (8th Cir. 1980) (holding erroneous admission of evidence does not require reversal if based on harmless error). Specifically,

Rule 61 states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court ... is ground for ... vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.

Fed. R. Civ. P. 61.

We begin by concluding the district court did not err in striking the August 19, 2002 hearing transcript and August 29, 2002 attorney letter, both of which deal with the Bank's second motion to compel. As the district court determined, neither was part of the record on which the bankruptcy court based its summary judgment decision. As the bankruptcy judge noted in the August 19, 2002 hearing on the second motion to compel, he had already ordered the Martinezes to comply and answer the certified questions, "[s]o why should I order them to do it again?" Clearly, the Martinezes had already wilfully violated the bankruptcy court's Order to Compel, sufficient for discharge under § 727(a)(6)(C), well before the Bank filed its second motion to compel.

Even if the district court somehow erred in striking the hearing transcript and letter, our review of those documents shows neither would change the summary judgment disposition under the harmless error standard. This is because

the Martinezes exclusively rely on those documents to point out the bankruptcy court, at the hearing in question, verbally agreed to postpone a ruling on the Bank's second motion to compel until the conclusion of the criminal trial, which was to begin in three weeks. They claim these documents establish the bankruptcy court improperly granted summary judgment without first ruling on the Bank's second motion to compel. However, ten days after the August 19, 2002 hearing, and one day after the hearing on the summary judgment motion, the Martinezes' attorney informed the bankruptcy court Ms. Martinez pled guilty, thereby removing the contingency of a trial on which the bankruptcy court's comment to withhold its ruling was based. Thus, even if the bankruptcy court's comment somehow extended to delaying summary judgment, which we conclude it did not, the same contingency of trial was removed, leaving the court free to rule on either motion.

In addition, at no time during the second motion to compel in the main bankruptcy proceeding, or the motion for summary judgment in the adversary proceeding, or at any other time indicated in the record, did the Martinezes ask for a stay of the bankruptcy court's summary judgment decision. Thus, even if we considered the August 19, 2002 hearing transcript or the August 29, 2002 letter from the Martinezes' attorney, which informally advised the court to wait for

sentencing before ruling on the second motion to compel, it does not change the fact the Martinezes never requested a stay of the summary judgment decision in the adversary proceeding. As a result, even if the district court somehow erred in the exclusion of this evidence, the Martinezes have not shown how such an error prejudiced them in a manner inconsistent with substantial justice. *See* Fed. R. Civ. P. 61.

## III. CONCLUSION

Based on the foregoing grounds, we conclude neither the bankruptcy court, nor the district court on appeal, erred in denying the Martinezes discharge of their debt for wilful refusal to respond to material questions approved by the court, in reliance on 11 U.S.C. § 727(a)(6)(C). Accordingly, we **AFFIRM** the district court's decision and orders.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge